Tina ELLIS, et al., Plaintiffs,

v.

UNITED STATES of America and the Washington County Water Conservancy District, Defendants.

No. 94–C–778 G.

United States District Court,
D. Utah,
Central Division.

April 12, 1996.

Dale A. Kimball, Robert S. Clark, Mark F. James, Gregory M. Hess, Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, Utah, for plaintiffs.

Scott M. Matheson, Jr., United States Attorney, Stephen J. Sorenson, Carlie Christensen, Assistant United States Attorney, Salt Lake City, Utah, for defendant United States.

## ORDER

J. THOMAS GREENE, District Judge.

The plaintiffs made a motion for the award of attorney fees and costs in pursuing their request under the Freedom of Information Act. The matter was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). The magistrate judge made a report and recommendation that the motion be denied. No objection has been taken to the report and recommendation. The court has reviewed the file and hereby adopts the report and recommendation of the magistrate judge. Therefore,

**IT IS HEREBY ORDERED** that the plaintiffs' motion for attorney fees and costs for pursuit of their Freedom of Information Act is denied.

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

This case is before the court on plaintiffs' motion for an award of attorney's fees and costs incurred in pursuing a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. (Pls.' Renewed Mot.Compel FOIA Compliance, Prod.Docs., & Payment Costs & Att'y Fees (hereinafter "Renewed FOIA Mot.," File Entry 119.) Plaintiffs' FOIA request sought various documents relating to an incident that occurred in Zion National Park in July 1993 which resulted in the drowning of two members of a hiking party. The case was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). The magistrate judge heard oral argument on this issue on February 7, 1996.

## I. BACKGROUND

On July 15, 1993, David Fleischer, Mark Brewer, Kim Ellis, and five teenage boys entered the slot portion of Kolob Creek Canyon in Zion National Park as part of a planned outing. A few hours after their initial descent into the canyon, Fleischer and Ellis drowned. The surviving members of the party remained stranded in the canyon for five days and four nights while an intensive search and rescue operation was conducted to retrieve them and to locate and recover the bodies of Fleischer and Ellis.

On December 30, 1993, plaintiffs filed an administrative claim with the Department of Interior under the Federal Tort Claims Act (FTCA) seeking approximately $24.5 million in damages for losses allegedly sustained as a result of this incident. (U.S. ex. F.) [1]

On January 25, 1994, Mark James, counsel for plaintiffs, sent a letter to Donald A. Falvey, Superintendent of Zion National Park, requesting, pursuant to FOIA, thirteen categories of documents relating to the Kolob Creek incident. (James Decl. ¶ 1, & ex. 1, file entry 29.) [2] Mr. Falvey forwarded plaintiffs' FOIA request to Jack O'Brian, the FOIA officer in the Rocky Mountain Regional Office of the National Park Service (NPS). (James Decl. ¶ 2, & ex. 2; O'Brian Decl. ¶ 6.) [3]

On January 28, 1994, Mr. O'Brian wrote to Mr. James informing him that he could expect a response to his FOIA request by February 10, 1994. (James Decl. ¶ 2, & ex. 2; O'Brian Decl. ¶ 8.) On February 10, 1994, Mr. O'Brian again wrote to Mr. James stating that he was taking a ten-day extension pursuant to 43 C.F.R. § 2.17(c) due to the need to search for and examine a voluminous number of records and to consult with other components within the Department of Interior. Mr. O'Brian indicated that a response would be sent by February 25, 1994. (James Decl. ¶ 3, & ex. 3; O'Brian Decl. ¶ 9.)

On February 23, 1994, Mr. O'Brian wrote to Mr. James informing him pursuant to 43 C.F.R. § 2.17(f) that because of the potentially time-consuming and voluminous nature of his request that significant time would be necessary to enable the National Park Service to determine which records were required to fulfill the request and where those records were located. Mr. O'Brian explained that because of the general nature and time span of the request that it was likely that the documents had been retired to any one of twenty-eight Federal Records Centers (FRC's) across the United States, and consequently, could only be located by a manual search. Past experience indicated that the manual search and review process easily could take six months from the date the specific request was forwarded to the administrator of the FRC's. Mr. O'Brian further explained that the FRC's are exempt from the legislatively mandated time frames and are only required to produce documents on a first-in, first-out basis dictated by the complexity of the request. Mr. O'Brien indicated that plaintiffs' request would be considered complex. Consequently, Mr. O'Brien suggested that plaintiffs might wish to consider canceling, modifying, or otherwise restating their request. Finally, Mr. O'Brian stated that he would not begin processing the request until he received (1) a written assurance that Mr. James was willing and able to pay in advance any recoverable fees incurred by the NPS in processing the request, and (2) a statement indicating Mr. James's desire either to cancel or modify the request or to proceed with the original request. (James Decl. ¶ 4, & ex. 4; O'Brian Decl. ¶¶ 10–11.)

On March 7, 1994, Mr. James submitted a modified FOIA request, narrowing the scope of the information sought. However, Mr. James did not provide any assurance of his willingness or ability to pay any fees incurred in processing the request. (James Decl. ¶ 5, & ex. 5; O'Brian Decl. ¶ 12.)

---

1. Unless otherwise specified, the government's exhibits, referred to as "U.S. ex. ——," are attached to the United States' Exhibits in Opposition to Plaintiffs' Renewed Motion to Compel FOIA Compliance, Production of Documents and Payment of Costs and Attorneys' Fees, file entry 132.

2. Exhibits cited in connection with the James declaration are attached thereto.

3. The O'Brian declaration is U.S. ex. G.

On April 15, 1994, Mr. James telephoned Mr. O'Brian to inquire about the status of the FOIA request. Mr. O'Brian advised him that NPS could not process the request until it received written assurance of his willingness and ability to pay the fees in advance. That same day, Mr. James wrote a letter providing the necessary assurance. (James Decl. ¶ 7, & ex. 6; O'Brian Decl. ¶ 13.)

On April 19, 1994, Mr. O'Brian wrote Mr. James acknowledging receipt of his written assurance of his willingness and ability to pay the anticipated fees. Mr. O'Brian stated that NPS would send an estimate of the costs to process the modified request no later than May 3, 1994. (James Decl. ¶ 8, & ex. 7.)

On May 3, 1994, Mr. O'Brian wrote Mr. James advising him that the NPS was taking a ten-day extension of time pursuant to 43 C.F.R. § 2.17(c) to search for and collect the requested information from a variety of sources located outside Denver and to consult with another agency and components of the Department of the Interior. Mr. O'Brian indicated that a final reply would be sent by May 17, 1994. No estimate of the processing costs was included. (James Decl. ¶ 9, & ex. 8; O'Brian Decl. ¶ 14.)

On May 4, 1994, Mr. O'Brian received approximately 250 pages of material from Zion National Park that NPS staff believed was responsive to the FOIA request. (O'Brian Decl. ¶ 15.)

On May 17, 1994, Mr. O'Brian wrote Mr. James that the information sought in the modified FOIA request had been researched, gathered, and organized by NPS staff. Mr. O'Brian stated, however, that because plaintiffs had filed a notice of tort claim, the United States Attorney and United States Department of the Interior solicitors would have to review the material before release to determine whether any of the documents had been prepared in anticipation of litigation. Mr. O'Brian advised that the legal review process would probably take two to three weeks. (James Decl. ¶ 10, & ex. 9; O'Brian Decl. ¶ 16.)

On June 20, 1994, Mr. O'Brian received a detailed list of materials responsive to the FOIA request from the Regional Solicitor's office with document-by-document instructions regarding disclosure. At that time, Mr. O'Brian began to assemble and photocopy the documents which were to be disclosed and to redact or segregate those portions which were not. (O'Brian Decl. ¶ 17.)

On June 21, 1994, Mr. O'Brian wrote to Mr. James informing him that the U.S. Attorney's office and the Regional Solicitor's office were in the final stages of reviewing the material and that the review would be completed in the near future. (O'Brian Decl. ¶ 18; James Decl. ¶ 12, & ex. 10.)

On June 27, 1994, Mr. O'Brian contacted Mr. Falvey and requested that Zion National Park staff conduct a second broad-based search of all park files that might contain material responsive to plaintiffs' FOIA request. (O'Brian Decl. ¶ 19.)

On July 6, 1994, Mr. O'Brian wrote Mr. James advising him that the review process by the U.S. Attorney and the Regional Solicitor in Salt Lake City had been completed. Mr. O'Brian stated that within seven to ten days, the material would be forwarded to his office in Denver for final processing in preparation for release directly to Mr. James. (O'Brian Decl. ¶ 20; James Decl. ¶ 14, & ex. 12.) That same day, Mr. James also wrote to Mr. O'Brian requesting a date certain for delivery of the FOIA materials. Mr. James warned Mr. O'Brian that if the FOIA information was not immediately provided, he would have no alternative but to seek relief in the United States District Court. (James Decl. ¶ 13, & ex. 11; O'Brian Decl. ¶ 20.)

On July 15, 1994, Mr. O'Brian wrote Mr. James advising him of the amount of the administrative fee for fulfilling the FOIA request. Mr. O'Brian stated that he would mail the FOIA information within twenty-four hours of receiving payment of the fee. In addition, Mr. O'Brian stated that when completed, he would mail a second package containing duplicates of pictures requested by plaintiffs and any other documents that might have surfaced in the meantime. (O'Brian Decl. ¶ 21; James Decl. ¶ 15, & ex. 13.)

On July 20, 1994, Mr. O'Brian wrote Mr. James stating that he had enclosed the non-

privileged material in possession of NPS that was responsive to plaintiffs' FOIA request. Mr. O'Brian also stated that on or before August 15, 1994, he would send a second package containing duplicates of the pictures and copies of any additional materials that had surfaced as a result of the continued search of NPS files. The first sentence of the letter stated that it was in "final response" to the FOIA request. (James Decl. ¶ 18, & ex. 15; O'Brian Decl. ¶ 22.)

On July 22, 1994, Mr. James received the first set of documents responsive to plaintiffs' FOIA request totaling 169 pages. (James Decl. ¶¶ 17, 21.)

On August 9, 1994, plaintiff filed this suit, asserting claims under the FTCA and FOIA. (Compl.)

On August 12, 1994, Mr. O'Brian wrote Mr. James that NPS had retained a private firm in Salt Lake City to produce high quality copies of the requested photographs, some of which were of poor quality. Mr. O'Brian stated that the firm was experiencing technical difficulties in reproducing the photographs, but that he had instructed the firm to provide as high a quality of reproductions as possible within the next thirty days. (O'Brian Decl. ¶ 23; U.S.Ex.Supp.Mot.Stay & Opp'n Pls.' Mot. FOIA Compliance, ex. 1, file entry 50.)

On August 29, 1994, Mr. O'Brian traveled to Zion National Park and spent approximately five days reviewing files and interviewing NPS employees involved in the search and rescue operation. At that time, Mr. O'Brian manually searched approximately eight feet of files. He returned to the NPS regional office in Denver with additional documents that NPS employees believed were responsive to the FOIA request. (O'Brian Decl. ¶ 26.)

On September 16, 1994, Mr. O'Brian wrote Mr. James that he was in possession of some of the pictures requested by plaintiffs. Mr. O'Brian stated that when he had received all of the pictures to be released, he would forward them all to Mr. James in one package. (James Decl. ¶ 40, & ex. 27.)

On November 4, 1994, Mr. O'Brian sent Mr. James copies of ninety-four pictures relating to the Kolob Creek rescue operation. Mr. O'Brian indicated that these were all the pictures in the possession of the NPS except for a videotape produced in anticipation of litigation which Mr. O'Brian claimed was exempt from disclosure. (James Decl. ¶¶ 42–43, & ex. 28.)

On November 23, 1994, plaintiffs filed a Motion to Order FOIA Compliance, a "Vaughn Index," [4] and for an Award of Costs and Attorneys' Fees (hereinafter "Orig. FOIA Mot.," file entry 26.) Plaintiffs' supporting memorandum identified several categories of documents that plaintiffs' counsel believed were responsive to the FOIA request, but that had not been provided by NPS. (Mem.Supp.Orig.FOIA Mot. at A3–A7, file entry 27.)

On December 14, 1994, representatives from the U.S. Attorney's office met with plaintiffs' counsel in an effort to clarify and resolve certain issues raised by the FOIA motion. At that time, plaintiffs' counsel was advised that the FOIA process was continuing and upon completion, Mr. O'Brian would provide the final response to their FOIA request including production of all non-privileged, responsive documents in the possession of Zion National Park, a list of documents determined to be exempt under FOIA, the name and address of the person making that decision, and a statement of plaintiffs' administrative appeal rights. In addition, the United States produced some of the documents that plaintiffs had identified in their memorandum explaining that the documents had been mistakenly withheld due to clerical error. At the meeting, the U.S. Attorney proposed that its response to plaintiffs' FOIA motion be continued until completion of the FOIA process. The U.S. Attorney suggested that after reviewing the final FOIA response, all parties would be in a better position to identify their differences and provide more specific briefing for the court. (U.S.Ex.

---

**4.** See *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

Supp.Mot.Stay & Opp'n Pls.' Mot. FOIA Compliance, ex. 5, file entry 50.)

On December 20, 1994, plaintiffs' counsel wrote to the U.S. Attorney stating that their clients would not waive any of their rights to redress of the alleged FOIA violations. Plaintiffs' counsel agreed to a one-week extension for the United States to respond to its motion, but declined to grant an open extension. (*Id.*, ex. 6.)

On January 4, 1995, the United States filed a motion to stay on the ground that plaintiffs were not entitled to immediate production of all non-privileged documents or the immediate preparation of a *Vaughn* index where exceptional circumstances existed and NPS was exercising due diligence in responding to plaintiffs' FOIA request. (U.S.Mot.Stay; U.S.Mem.Supp.Mot.Stay & Opp'n Pls.' Mot. FOIA Compliance, file entries 45 & 46.)

On January 12, 1995, plaintiffs served the government with their First Request for Production of Documents requesting another forty-three categories of documents. (Pls.' App.Ex.Mem.Supp.Renewed Mot.Compel FOIA Compliance, Prod.Docs. & Payment Costs & Att'y' Fees, ex. E, file entry 124 (hereinafter "Pls.' App."))

On February 6, 1995, Mr. O'Brian wrote Mr. James enclosing additional responsive documents and indicating that the letter was NPS's final response to plaintiffs' modified FOIA request. Mr. O'Brian also provided a list of documents withheld and the FOIA exemption upon which the decision to withhold was based. Finally, Mr. O'Brian identified the officials who made the decision to withhold the information and informed plaintiffs of their administrative appeal rights. (Suppl. James Decl. ¶¶ 2–3, & ex. 1 thereto, file entry 120.)

On April 4, 1995, plaintiffs' received the United States' Responses to Plaintiffs' First Set of Requests for Production of Documents. (Pls.' App., ex. G, file entry 124.) The response included additional documents that had not been produced in response to plaintiffs' FOIA request. (Suppl.James Decl. ¶¶ 4–6, file entry 120.) The government states that these documents were not produced earlier because they either were not

responsive to the FOIA request or were not in the custody and control of the Rocky Mountain Regional Office of NPS or Zion National Park. (U.S.Mem.Opp'n Renewed Mot.Compel FOIA Compliance, Prod.Docs. & Payment Costs & Att'y Fees at 10, ¶ 30, 46–48, file entry 131.)

On May 26, 1995, plaintiffs' counsel wrote to the U.S. Attorney's office requesting an additional twenty-eight categories of documents that had been referred to by former Chief Ranger Larry Van Slyke in his deposition. (U.S. ex. H.) On June 16, 1995, the U.S. Attorney's office responded by letter indicating that in regard to twenty of the twenty-eight categories, the documents were enclosed, would be produced, or had already been produced. (United States' ex. I.)

On September 1, 1995, the United States supplemented six of its responses to plaintiffs' first request for production of documents. (U.S. ex. J.)

On September 29, 1995, plaintiffs' counsel wrote the U.S. Attorney's office requesting an additional forty-three categories of documents. (U.S. ex. K.) On October 23, 1995, the U.S. Attorney's office responded, agreeing to provide the requested documents with regard to twenty-five of the forty-three categories, or indicating that the documents already had been provided. (U.S. ex. L.)

On November 1, 1995, plaintiffs filed the instant motion seeking an order to compel the United States to produce certain documents, to identify any additional responsive documents, and for costs and attorney's fees. (Pls.' Renewed FOIA Mot., file entry 119.)

On November 17, 1995, plaintiffs wrote the U.S. Attorney's office requesting an additional sixteen categories of documents. (U.S. ex. M.)

At the time it filed its opposition to the instant motion, the United States had produced approximately 6,000 pages of documents and asserted a privilege with respect to seventeen documents. (U.S.Mem.Opp'n Renewed Mot.Compel FOIA Compliance, Prod.Docs. & Payment Costs & Att'y Fees at 11, ¶ 39, file entry 131.)

## II. DISCUSSION

Plaintiffs contend that they should be awarded their costs and attorney's fees in pursuing their FOIA claim.

The FOIA statute provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

■ To be entitled to an award of attorney's fees, a plaintiff must establish that it substantially prevailed in the litigation and that an award of attorney's fees is otherwise justified. *Anderson v. United States Dep't of Health & Human Servs.*, 3 F.3d 1383, 1384 (10th Cir.1993); *Alirez v. NLRB*, 676 F.2d 423, 428 (10th Cir.1982). Once a plaintiff establishes that it has substantially prevailed, courts consider the following four factors as guidelines in determining whether to award attorney's fees: (1) the benefit to the public derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government had a reasonable basis in law for withholding the records. *Aviation Data Serv. v. FAA*, 687 F.2d 1319, 1321 (10th Cir.1982); *Detroit Free Press, Inc. v. Department of Justice*, 73 F.3d 93, 98 (6th Cir.1996); *Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C.Cir.1995).

### A. Plaintiffs Must "Substantially Prevail" on Their FOIA Claim

■ The determination of whether a plaintiff has substantially prevailed within the meaning of section 552(a)(4)(E) is essentially an issue of causation. *Weisberg v. U.S. Dep't of Justice*, 848 F.2d 1265, 1268 (D.C.Cir.1988); *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C.Cir.1981). Although a court order compelling disclosure

is not a condition precedent to an award of attorney's fees, the plaintiff must show that (1) the suit was reasonably necessary to obtain the records, and (2) that a causal nexus exists between the suit and the agency's release of the records. *Maynard v. CIA*, 986 F.2d 547, 568 (1st Cir.1993); *Long v. United States IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991); *Weisberg*, 848 F.2d at 1268; *Miller v. United States Dep't of State*, 779 F.2d 1378, 1389 (8th Cir.1985); *Cox v. United States Dep't of Justice*, 601 F.2d 1, 6 (D.C.Cir.1979).

■ The mere filing of a lawsuit and the subsequent release of records does not establish that the plaintiff has substantially prevailed. *Maynard*, 986 F.2d at 568; *Weisberg*, 848 F.2d at 1268; *Cox*, 601 F.2d at 6. Thus, where the same information could have been obtained through other means, the plaintiff is not eligible for attorney's fees. *See, e.g., Murty v. Office of Personnel Management*, 707 F.2d 815, 816 (4th Cir.1983) (stating that a telephone call inquiring what had happened to the request would have produced the same result as the lawsuit). Similarly, a plaintiff may not be eligible for a fee award where the release of documents was due to routine, but delayed, administrative processing. *Cox*, 601 F.2d at 6; *Arevalo–Franco v. INS*, 772 F.Supp. 959, 961 (W.D.Tex.1991); *see Weisberg*, 848 F.2d at 1268–71.

Within ten working days of receiving a FOIA request, an agency is required to determine whether to comply with the request and to immediately notify the person making the request of the determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i). In "unusual circumstances," an agency may extend the time limits for up to ten working days by providing written notice to the person making the request of the reasons for the extension and the date on which the determination is expected to be dispatched.[5]

---

5. "Unusual circumstances" is defined as follows:

(i) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

(ii) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(iii) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

5 U.S.C. § 552(a)(6)(B)(i)–(iii).

§ 552(a)(6)(B). Upon determination by an agency to comply with the request, the records shall be made "promptly available." § 552(a)(6)(C). Any notification of a denial of a request must set forth the names of the persons responsible for the denial. *Id.*.

▉ It should be noted that the purpose of the FOIA time limits is to prevent the government from using administrative delay to shield FOIA disputes from judicial review. *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704, 715 (D.C.Cir.1977). Thus, a plaintiff is deemed to have exhausted its administrative remedies if an agency fails to comply with the time limits. 5 U.S.C. § 552(a)(6)(C); *Nationwide Bldg. Maintenance, Inc. v.,* 559 F.2d at 707 n. 6. The time limits "should not be read as a congressional imprimatur, conclusively establishing the necessity of court action when an agency does not comply." *Nationwide Bldg. Maintenance, Inc.,* 559 F.2d at 715.

▉ In the instant case, plaintiffs submitted their modified FOIA request on March 7, 1994. The NPS did not provide any documents until July 20, 1994 when it produced 169 pages of documents that it considered to be non-privileged. The letter accompanying the disclosure stated that it was in "final response" to plaintiffs' FOIA request. In addition, the letter stated that plaintiffs would receive requested photographs on August 15, 1994, along with any additional documents that had surfaced by that time, as the NPS file search was continuing.

Plaintiffs assert that the July 20, 1994 response was deficient for four reasons: (1) NPS failed to provide clearly responsive documents referenced in other NPS documents; (2) plaintiffs' requests for several categories of documents, including backcountry permits, were largely unfulfilled; (3) NPS failed to identify any of the responsive documents that it was withholding; and (4) NPS failed to identify the officials responsible for the determination to withhold the documents. In plaintiffs' view, the thrust of Mr. O'Brian's letter was that NPS had provided all but a few incidental documents. Plaintiffs state that based upon NPS's disregard of the FOIA time limits and the deficiency of the "final response," they reasonably concluded that legal action would be necessary to obtain a complete response to their FOIA request.

On August 9, 1994, plaintiffs filed the instant lawsuit asserting claims under the FTCA and FOIA. On November 4, 1994, NPS sent the photographs mentioned in the July 20, 1994 letter, but no additional documents were provided. On November 23, 1994, plaintiffs filed their original FOIA motion. At a December 14, 1994 meeting between counsel for both parties, plaintiffs' counsel was advised that their FOIA request was continuing to be processed and that upon completion, they would receive a final response which would include all non-privileged documents. In addition, NPS provided some documents that had been mistakenly withheld due to clerical error.

On February 6, 1995, NPS sent its second "final response" to the FOIA request. This response included additional documents responsive to plaintiffs' FOIA request. The response also included a list of documents that had been withheld pursuant to FOIA exemptions.

On April 4, 1995, the United States produced a large quantity of documents in response to plaintiffs' request for production of documents. Plaintiffs allege that many of these documents were responsive to their FOIA request.

Plaintiffs further allege that several weeks prior to filing the instant motion, they communicated with opposing counsel challenging the United States' privilege claim as to a number of documents. In response, the United States produced several documents that allegedly had been improperly withheld on claims of exemption.

Plaintiffs state that in all, the United States has produced thousands of pages of documents responsive to their FOIA request that had been withheld before plaintiffs filed this action. Plaintiffs contend that these facts demonstrate that their FOIA suit was necessary to obtain the responsive documents.

In response, the government states that NPS's failure to make prompt disclosure was not the result of intentional delay; rather, it

was the result of unavoidable delay accompanied by due diligence in the administrative process. The government explains that NPS has been deluged with FOIA requests in recent years. Mr. O'Brian was solely responsible for processing all FOIA requests directed to the Rocky Mountain Regional Office, the forty-seven national parks located in the Rocky Mountain Region, and in some instances, the director of NPS. In 1994, Mr. O'Brian received 216 FOIA requests, almost one for each working day. In addition, Mr. O'Brian was responsible for maintaining and managing the public information office for the Rocky Mountain Region, and in that capacity received 28,000 requests for information last year. Mr. O'Brian had no secretary or other support staff. (O'Brian Decl. ¶¶ 2–3.) The government states that because the failure to disclose was caused by unavoidable delay in the administrative process, plaintiffs have failed to show the requisite causal nexus between their suit and the subsequent disclosure of the documents. The government contends, therefore, that plaintiffs have not substantially prevailed on their FOIA claim.

Based upon the substantial number of responsive documents that were produced after this suit was filed, and subsequent to the NPS's first "final response," plaintiffs have demonstrated that the suit was necessary to obtain the responsive documents. In addition, the facts support a finding that plaintiffs' persistence in litigating their FOIA claim was the principal cause of NPS's eventual release of the documents. Accordingly, plaintiffs have substantially prevailed on their FOIA claim.

### B. *Application of the Four–Part Balancing Test*

■ The government asserts that even if plaintiffs have substantially prevailed, they are not entitled to attorney's fees because they have not established that an award is otherwise justified. The government argues that all four of the factors weigh against an award of fees.

The first factor to be considered is the public benefit, if any, derived from the case. Plaintiffs argue that the public will benefit from its success on its FOIA claim in at least two respects: (1) the public will have more complete information concerning NPS's involvement in the Kolob Creek incident which plaintiffs contend is of wide-spread public interest and concern; and (2) NPS will have a better understanding that it must comply with FOIA requests.

■ The purpose of FOIA is to provide a method of informing the public about government operations and not to benefit private litigants. *Aviation Data Serv.,* 687 F.2d at 1322; *Tax Analysts v. United States Dep't of Justice,* 965 F.2d 1092, 1095 (D.C.Cir.1992); *Fenster v. Brown,* 617 F.2d 740, 743–44 (D.C.Cir.1979). While it is true that the successful FOIA plaintiff always achieves some degree of public benefit by bringing the government into compliance with FOIA and by the benefit assumed to flow from public disclosure of government information, *Aviation Data Serv.,* 687 F.2d at 1323; *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir.1978); *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1367 (D.C.Cir.1977), the test in weighing the public benefit factor is "whether the disclosure will assist the citizenry generally in making an informed judgment as to governmental operations." *Aviation Data Serv.,* 687 F.2d at 1323. "Thus the factor of 'public benefit' does not particularly favor attorney's fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Aviation Data Serv.,* 687 F.2d at 1323 (quoting *Blue v. Bureau of Prisons,* 570 F.2d at 533–34); accord *Cotton,* 63 F.3d at 1120.

In the instant case, the public benefit factor weighs against an award of attorney's fees. Although there may have been some slight public benefit in bringing the government into compliance with FOIA and providing information of general interest to the public, the disclosure of the records did not add to the fund of information necessary to make important political choices.

The second and third factors, the commercial benefit to the plaintiff and the nature of

the plaintiff's interest in the records sought, also weigh against an award of fees. Because these factors are closely related, they are often considered together. *Tax Analysts,* 965 F.2d at 1095; *Church of Scientology v. United States Postal Serv.,* 700 F.2d 486, 494 (9th Cir.1983); *Solone v. IRS,* 830 F.Supp. 1141, 1143 (N.D.Ill.1993).

 In considering these factors, the court must keep in mind that the FOIA attorney's fee provision was designed to assist potential plaintiffs in overcoming the often insurmountable obstacle presented by costs and attorney's fees to the average person seeking information under FOIA. *Tax Analysts,* 965 F.2d at 1095; *Crooker v. United States Parole Comm'n,* 776 F.2d 366, 366–67 (1st Cir.1985); *Lovell v. Alderete,* 630 F.2d 428, 433 n. 6 (5th Cir.1980) (stating that the purpose of fee awards is to encourage plaintiffs who lack substantial private or pecuniary incentives to pursue their claims). Thus, when a litigant seeks disclosure of information for a commercial benefit or out of other personal motives, an award of fees is generally inappropriate. *Tax Analysts,* 965 F.2d at 1095. *See also Polynesian Cultural Ctr., Inc. v. NLRB,* 600 F.2d 1327, 1330 (9th Cir. 1979) (stating that attorney's fee award should not " 'merely subsidize a matter of private concern' at taxpayer expense") (quoting *Blue v. Bureau of Prisons,* 570 F.2d at 533–34); *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d at 715 (stating that the touchstone of the determination to award attorney's fees must be whether such an award is necessary to implement FOIA); *Hill Tower, Inc. v. Department of Navy,* 718 F.Supp. 568, 572 (N.D.Tex.1989) (stating that if plaintiffs have sufficient private incentive to pursue their claims, the policy objective of fee awards is fulfilled and the award of fees is inappropriate); *Solone v. IRS,* 830 F.Supp. at 1143 (plaintiffs' private self-interest was sufficient to secure vindication of their rights under FOIA).

Courts have routinely found that the use of FOIA as a substitute for discovery constitutes a private, noncompensable interest. *See, e.g., Stein v. Department of Justice,* 662 F.2d 1245, 1263 (7th Cir.1981) (observing that an element of personal gain was involved where the plaintiff intended to use the FOIA information in another lawsuit in which he was seeking damages); *Nationwide Bldg. Maintenance, Inc.,* 559 F.2d at 712 (stating that a court ordinarily will not award fees if FOIA was used as a substitute for discovery in private litigation with the government); *Maryland Dep't of Human Resources v. Sullivan,* 738 F.Supp. 555, 563 (D.D.C.1990) (stating that the use of FOIA as a substitute for civil discovery is not proper and should not be encouraged by a fee award); *Hill Tower, Inc.,* 718 F.Supp. at 572.(denying fees where the information obtained was for the private benefit of the plaintiff in its tort claim against the government); *Republic of New Afrika v. FBI,* 645 F.Supp. 117, 121 (D.D.C. 1986) (rejecting fee request where plaintiff's motives were purely personal—to exonerate its members of criminal charges and circumvent civil discovery); *Simon v. United States,* 587 F.Supp. 1029, 1033 (D.D.C.1984) (denying attorney's fees where FOIA was used as a substitute for civil discovery); *Guam Contractors Ass'n v. United States Dep't of Labor,* 570 F.Supp. 163, 169 (N.D.Cal.1983) (fee award improper where plaintiff used FOIA to get a head start on discovery); *Education–Instruccion, Inc. v. United States Dep't of Hous. & Urban Dev.,* 87 F.R.D. 112, 116 (D.Mass.1980) (stating that "the public should not be required to finance the investigation of a FOIA plaintiff who makes his request with an eye toward prosecuting some litigation to his own benefit.").

Plaintiffs assert that it is "absurd" to suggest that they will derive a commercial benefit from disclosure of the records. Nevertheless, the record reflects that plaintiffs had a strong personal interest in obtaining the information. Plaintiffs filed an administrative claim seeking in excess of $24 million in damages. The evidence suggests that plaintiffs sought the FOIA information for use in the instant litigation. Thus, it appears that plaintiffs had an adequate personal motive to seek judicial relief in the absence of the incentive of an award of attorney's fees. Accordingly, the plaintiffs' strong personal motivation for filing the FOIA claim outweighs any public benefit resulting from disclosure of the requested information.

The fourth factor concerns whether the government's withholding of documents had a reasonable basis in law. The government need only show that it had a "reasonable or colorable basis for the withholding." *Aviation Data Serv.*, 687 F.2d at 1323; *Cotton*, 63 F.3d at 1121; *Chesapeake Bay Found. v. Department of Agric.*, 11 F.3d 211, 216 (D.C.Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994). Further, the government must not have engaged in recalcitrant or obdurate behavior. *Tax Analysts*, 965 F.2d at 1097; *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364 (D.C.Cir. 1977). *See also Blue v. Bureau of Prisons*, 570 F.2d at 534 (stating that an award of attorney's fees would be favored where nondisclosure was designed to avoid embarrassment to the agency or to thwart the requester).

In the instant case, plaintiffs contend that this factor weighs in their favor because the government had no basis in law for withholding a large number of documents that it produced after plaintiffs' filed their FOIA claim. (Mem.Supp.Pls.' Renewed FOIA Mot. at 29, file entry 123.) In their reply memorandum, plaintiffs reiterate their position that this issue does not turn on whether the government had a reasonable basis in law for withholding the documents that remained in dispute at the time they submitted their memoranda. Instead, their central contention is that the government did not have a reasonable basis for withholding "thousands of pages of responsive documents" until after plaintiffs filed suit. (Pls.' Reply Mem.Supp.Renewed FOIA Mot. at 31, file entry 144.)

Since plaintiffs' challenge is to the government's delay in releasing the records rather than its substantive claims of exemption, the reasonableness factor does not favor a fee award so long as the government did not engage in obdurate behavior or bad faith.[6] *See Frydman v. Department of Justice*, 852 F.Supp. 1497, 1508 (D.Kan.1994) (finding that although eight-month delay in

disclosing document after it was discovered demonstrated some sluggishness by agency, it did not show bad faith), *aff'd*, 57 F.3d 1080 (10th Cir.1995); *Republic of New Afrika v. FBI*, 645 F.Supp. at 122 (stating that plaintiff must show that government purposely withheld documents, not that it merely delayed in producing them); *Alliance for Responsible CFC Policy, Inc. v. Costle*, 631 F.Supp. 1469, 1471 (D.D.C.1986); *Simon v. United States*, 587 F.Supp. at 1032 (stating that an agency's failure to meet the FOIA deadlines does not warrant an award of fees in and of itself without evidence of bad faith and declining to award fees for sluggish agency response); *Guam Contractors Ass'n*, 570 F.Supp. at 170 (declining to award fees where plaintiff's requests were met with some "foot-dragging" and lack of cooperation by the government, but where there was no factual basis to justify a finding of bad faith).

It is undisputed that NPS was slow in producing the documents at issue. However, the facts do not indicate that the agency purposely delayed its FOIA response to prevent embarrassment or to thwart the requester. On the contrary, Mr. O'Brian was in frequent contact with plaintiffs' counsel and apparently responded to all of their communications. Due to the scope of plaintiffs' request, some delay was inherent.

Plaintiffs also complain that the NPS failed to produce documents that were referenced in other documents that were produced. (Pls.' Reply Mem.Supp.Renewed FOIA Mot. at 22, file entry 144.) However, an agency is only required to conduct a search that is reasonably calculated to discover the requested documents. *Kowalczyk v. Department of Justice*, 73 F.3d 386, 389 (D.C.Cir.1996); *Maynard*, 986 F.2d at 559. The agency's responsibility does not extend to following up "clues" in other documents. *Maynard*, 986 F.2d at 560; *Frydman*, 852 F.Supp. at 1505, 1508.

Although the NPS could have responded more efficiently to plaintiffs' FOIA request, it did not demonstrate the type of obdurate

---

6. In their reply memorandum, plaintiffs state that a second reason to reject the government's position on this issue is that the government had no reasonable basis for failing to produce non-exempt portions of documents that it withheld on claims of deliberative process privilege. Since plaintiffs failed to raise this issue in their opening memorandum, the court declines to address it.

or recalcitrant behavior that would favor an award of attorney's fees. *See LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 485–86 (D.C.Cir.1980) (denying fees where agency's alleged obduracy in producing documents did not outweigh the other factors). Thus, the fourth factor also weighs against an award of fees in this case.

## C. *Award of Attorney's Fees as a Sanction for Bad Faith*

Plaintiffs also argue that an award of attorney's fees is independently warranted as a sanction for the government's bad faith FOIA violations. Plaintiffs base this assertion on four instances of alleged bad faith on the part of the government: (1) NPS wrongfully withheld documents that would expose its negligence in the Kolob Creek Canyon incident; (2) NPS withheld documents from plaintiffs that it disclosed to the news media in an attempt to manipulate public opinion; (3) NPS deliberately withheld and then altered a binder of documents relating to the issuance of backcountry permits in Zion National Park; and (4) NPS engaged in improper delay tactics.

The court rejects plaintiffs' bad faith argument for the following reasons: (1) plaintiffs have neither identified a legitimate legal basis for this claim, nor cited any case law to support it; (2) the court does not accept the premise that "bad faith" would justify an award of attorney's fees in all cases; (3) the bad faith allegation is more appropriately considered under the fourth factor of the balancing test discussed above; and (4) the bad faith claim is not sustainable under the facts of this case. Nevertheless, the court will briefly address each of plaintiffs' bad faith allegations.

### 1. *Alleged Wrongful Withholding of Documents*

Plaintiffs first claim is that NPS withheld documents, without any claim of privilege, in order to conceal its own negligence. Plaintiffs state that it was not until they filed suit and exposed the NPS's wrongful withholding of the documents that it finally produced the documents.

### a. *Documents Allegedly Withheld from Initial FOIA Response*

Plaintiffs contend that NPS withheld the following five responsive documents, consisting of about sixteen pages, from their initial FOIA response in order to conceal its culpability: (1) two letters between the Washington County Water Conservancy District (WCWCD) regarding an incident in 1988 relating to the discharge of water from Kolob Reservoir, (2) a July 27, 1993 memorandum and supporting telephone records prepared by a WCWCD employee regarding conversations about water releases from Kolob Reservoir, (3) the first page of a post-incident interview with survivor Mark Brewer, (4) a hand-drawn elevation map of Kolob Creek Canyon, and (5) a report prepared by the Washington County Sheriff's Office. (Pls.' Reply Mem.Supp.Orig. FOIA Mot., ex. A–E, file entry 60.)

The government responds that the FOIA officer was instructed to produce these documents, but failed to do so due to a clerical error. However, the documents were produced on December 14, 1994.

Plaintiffs doubt the veracity of the government's claim of clerical error. They argue that the contents of the documents and the timing of their disclosure, i.e., after plaintiffs filed their FOIA motion specifically identifying certain documents, demonstrate that NPS's explanation for its failure to produce them simply cannot be believed.

Contrary to plaintiffs' argument, it is hardly surprising that the FOIA officer would make some mistakes in handling the vast quantity of materials released in this case. As the government points out, the FOIA officer mistakenly produced at least two documents that he had been instructed to withhold.

Regarding the specific documents at issue, plaintiffs contend that the two letters between WCWCD and Zion National Park demonstrate that defendants were aware of the danger presented by water releases from Kolob Reservoir and that park policy requires that hikers be warned of these dangers. The government responds that it has never disputed that hazards are posed by

releases from the reservoir. Further, the government points out that it released a letter in the initial FOIA disclosure written by an attorney-advisor for the regional solicitor's office which plaintiffs themselves characterized as having "specifically acknowledged and addressed the dangers to downstream hikers caused by releases from Kolob Reservoir." (Compl. at 6.) In light of the fact that this document was released, it does not appear that the government had a motive to withhold the two letters at issue.

Next, plaintiffs contend that the July 27, 1993 memorandum shows that NPS had prior knowledge of the water releases from Kolob Reservoir at the time of the incident at issue, and thus, had an incentive to withhold this memorandum to conceal its culpability. However, this memorandum was prepared by a WCWCD employee. Since this document would have been available from the WCWCD, the force of plaintiffs' argument is weakened. The same is true for the report prepared by the Washington County Sheriff's Office. In fact, the government states that both documents were provided to plaintiffs by those agencies.

Finally, plaintiffs state that NPS withheld an elevation map showing that the bodies of Fleischer and Ellis were found in Kolob Creek. However, as the government argues, it seems that NPS would have had little incentive to withhold this document given the publicity surrounding this incident and the fact that a large number of search and rescue personnel, including individuals from the Washington County Sheriff's Office, were present when the bodies were recovered.

b. *Documents Allegedly Withheld from the Final FOIA Response*

Plaintiffs contend that NPS also withheld responsive documents that provide evidence of NPS's negligence from its final FOIA response. Plaintiffs state that at the deposition of former Chief Ranger Larry Van Slyke, they learned of the following additional responsive documents not provided in the final FOIA response: monthly permit reports,[7] backcountry patrol reports, safety committee meeting minutes, Zion National Park's backcountry management plan, records of a hiking trip taken by Mr. Van Slyke and two employees of NPS's Water Resources Division in July 1993 in which they measured water flows in Kolob Creek, and trail reports which reported releases from Kolob Reservoir prior to the incident.[8]

Plaintiffs state that Mr. Van Slyke was involved in gathering documents responsive to plaintiff's FOIA request. (Van Slyke Dep. at 1008–19, Pls.' App., ex. H.) Further, plaintiffs state that Mr. Van Slyke was aware of the responsive documents that were not produced until after NPS's second "final response," particularly the documents related to water measurements in Kolob Creek.

Regarding the water measurement reports, the government states that they were not produced in the FOIA response because they were not generated, maintained, or controlled by Zion National Park, but were in the custody and control of the Water Resources Division of NPS in Fort Collins Colorado. The government states that because a FOIA request directed to a field installation or bureau FOIA officer is presumed to seek only the records of that installation or bureau, the FOIA officer in the instant case was entitled to presume that plaintiffs sought only records from Zion National Park. See 43 C.F.R. § 2.15(a).

Plaintiffs assert that their request was not limited to documents at Zion National Park and that the FOIA officer did not believe that their request was so limited as evidenced by his taking a ten-day extension due to the variety of document sources located outside Denver and his statement that the records might be located at various record centers.

---

7. The government states that it is not aware of any documents entitled "monthly permit reports," and thus, has not provided those documents.

8. The government responds, and plaintiffs concede, that certain of these documents were provided to them in the United States' response to plaintiffs' request for production of documents, more than six weeks prior to the Van Slyke deposition.

The District of Columbia Circuit has recently considered the scope of an agency's obligation to find documents located outside the office to which the request was sent. After first observing that an agency is only required to conduct a search reasonably calculated to uncover responsive documents and is not obliged to look beyond the four corners of the request for leads to the location of the documents, the court stated as follows:

> If the agency may reasonably interpret the request to be for records in a specific office or offices only—the office to which the request was sent or any office(s) named in the request—then upon discovering that it has other responsive records elsewhere, it may reasonably infer that the requester already has those records, is seeking them through a separate request, or, for whatever reason, does not want them. If, on the other hand, the requester clearly states that he wants all agency records on a subject, i.e., regardless of their location, but fails to direct the agency's attention to any particular office other than the one receiving the request, then the agency need pursue only a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain.

*Kowalczyk v. Department of Justice,* 73 F.3d 386, 389 (D.C.Cir.1996).

In the instant case, although Mr. O'Brian apparently did not interpret plaintiffs' FOIA request as being limited only to documents at Zion National Park, his search was primarily focused there. However, even interpreting plaintiffs' request as seeking all responsive documents no matter where they might be located, the request does not direct the agency's attention to any particular office other than the office that received the request. Thus, it does not seem unreasonable that Mr. O'Brian might fail to locate documents at the Water Resources Division in Fort Collins.

Although Mr. Van Slyke had personal knowledge of the water measurements, his involvement in responding to the FOIA request was limited to searching for documents located at the park. Since these documents were no longer at the park, Mr. Van Slyke might not have remembered them. Further, Mr. Van Slyke's deposition testimony reveals that the water measurements were taken for use in the Zion water rights adjudication. (Van Slyke Dep. at 559–63.) Consequently, Mr. Van Slyke might not have considered the documents relevant to plaintiffs' FOIA request. Under the circumstances, the evidence simply does not support a conclusion that NPS's failure to produce these documents was a result of bad faith.

Regarding Zion National Park's backcountry management plan, the government states that because it was prepared in 1979, it was not responsive to the "January 1, 1992 through the present" time frame of plaintiffs FOIA request and thus, was not provided. However, the government indicates that plaintiffs have been provided with a copy of that document.

 Regarding the failure to provide copies of safety committee meeting minutes, the government states that plaintiffs misunderstand the scope of Zion National Park's duty in responding to a FOIA request. As previously discussed, an agency is only required to conduct a search that is reasonably calculated to discover the requested documents. *Kowalczyk v. Department of Justice,* 73 F.3d at 389; *Maynard,* 986 F.2d at 559. An agency is not required to search every record system. *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir.1990). A search is not unreasonable simply because it fails to produce all relevant material. *Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir. 1986); *Miller v. United States Dep't of State,* 779 F.2d 1378, 1386 (8th Cir.1986) (stating that discovery of additional responsive documents is not conclusive of bad faith).

The record in this case demonstrates that NPS undertook an extensive search and produced a large number of documents. The fact that it failed to produce every possibly responsive document does not demonstrate bad faith on the part of defendant. Plaintiffs have not produced any evidence that suggests any improper motive or deceit on the part of the government. Accordingly, this claim is without merit.

### 2. Disclosure of Documents to Manipulate Public Opinion

 Plaintiffs' second claim is that NPS withheld documents from them which it dis-

closed to the news media in an attempt to manipulate public opinion. This claim is based upon a story published in the Salt Lake Tribune on August 21, 1994. (James Decl., ex. 26.) The article referred to a February 8, 1994 memorandum of a conversation between former Chief Ranger Van Slyke and Brent Haines, a friend of David Fleischer, who had acted as Fleischer's guide on a 1991 hike in Kolob Creek Canyon ("Haines memorandum"). According to the article, the memorandum revealed Mr. Haines's doubts about Mr. Fleischer's canyoneering abilities. The article further stated that Mr. Haines told Chief Ranger Van Slyke that Fleischer's decision to hike the canyon was "clearly a case of bad judgment." [9]

Superintendent Falvey, former Chief Ranger Van Slyke, Mr. O'Brian, the FOIA officer, and Denny Davies, the Zion National Park information officer, all stated that they did not disclose, or authorize anyone else to disclose, the Haines memorandum to the Salt Lake Tribune. (Falvey Decl. ¶¶ 2–3, file entry 48; Van Slyke Decl. ¶¶ 5–6, file entry 49; O'Brian Decl. ¶ 25; Davies Dep. at 151–53, U.S. ex. U.) Thus, the evidence shows that no NPS employee in a position of authority released the memorandum or authorized anyone else to release it. Further, because the substance of the memorandum was printed in the Salt Lake Tribune, the government subsequently provided plaintiffs with a copy of it.

Plaintiffs have not shown who released the memorandum, nor any improper motive on the part of NPS. Accordingly, even assuming that an award of attorney's fees might be warranted for such behavior, the court concludes that plaintiffs have not carried their burden on this claim.

### 3. *Alteration of a Binder of Documents*

Plaintiffs complain that defendants withheld and then altered a binder entitled "Standard Operating Procedures" containing docu-

ments relating to the issuance of backcountry permits in Zion National Park. In the fall of 1994 at the direction of counsel, Richard Fedorchak, an NPS employee, took the "Standard Operating Procedures" label off the binder and removed the memoranda relating to the issuance of backcountry permits. (Fedorchak Dep. at 37–39, ex. I to Pls.' App., file entry 124.)

Although the government has produced all of the documents contained in the binder in the order in which they appeared there, plaintiffs contend that NPS should be sanctioned because they have not received the binder in the form that it existed at the time of the Kolob Creek incident with the label intact. The government states that the original documents and label have been preserved and are available for plaintiffs' inspection. Since plaintiffs have received all of the documents originally contained in the binder, their contention that the government should be sanctioned is without merit.

### 4. *Improper Delay Tactics*

Plaintiffs allege that NPS engaged in improper delay tactics by (1) feigning confusion about the subject matter of plaintiffs' FOIA request, (2) taking an extra two months to conduct a "legal review" of the requested materials, and (3) delaying the release of materials that were already prepared for production.

Plaintiffs' first allegation concerns the production of backcountry hiking permits. On September 30, 1994, Mr. O'Brian wrote Mr. James asking clarification as to the meaning of the term "Kolob Canyon" in plaintiffs' FOIA request. Mr. O'Brian asked whether plaintiffs were seeking permits issued for "Kolob Creek Canyon," the "Kolob Canyons area" which is located some distance from the scene of the incident at issue, or for the whole of Zion National Park. Mr. O'Brian advised that if the request referred

---

9. The Tribune received the information in response to its own FOIA request. The article stated that NPS had provided the Tribune with a 200 page file on the Kolob Creek Canyon incident. Plaintiffs complain that they received less than 170 pages in NPS's initial response. At oral argument, counsel for defendant explained that

the difference in the number of pages was the result of the Tribune's receiving copies of plaintiffs' administrative claims. Since plaintiffs already had copies of these documents, the government did not provide duplicates in response to their FOIA request.

to Zion National Park in its entirety, there were a total of 6,045 backcountry permits issued in 1993 alone. Mr. O'Brian stated he was prepared to manually search these permits for relevant documents if that is what plaintiffs desired. Plaintiffs never responded to this letter. (See ex. 2 to U.S.Mem.Supp. Mot.Stay & Opp'n Mot.FOIA Compliance, file entry 46; O'Brian Decl. ¶ 27.)

Plaintiffs state that there was never any confusion on the part of Mr. O'Brian as to which permits they were seeking and that this letter was simply a pretense to cover up past FOIA violations and rationalize further delays. However, since plaintiffs chose not to respond to this request for clarification, they cannot now complain that NPS's failure to provide the documents was an improper delay tactic.

 Next, plaintiffs claim that they were treated differently than other requesters because they were potential litigants. Specifically, plaintiffs state that the government took an additional two months to review the materials to determine which documents were exempt from disclosure. Plaintiffs contend that NPS was required to make its decision on exemptions within the statutory period of ten days from the date of the request, or at the very least, within the ten-day extension period allowed in unusual circumstances. See 5 U.S.C. § 552(a)(6)(A), (B).

The government responds that plaintiffs were not singled out for different treatment because they were potential litigants. Rather, the regional solicitor's office conducted a review of the documents as expressly authorized by 43 C.F.R. § 2.16(a)(4).[10]

Although plaintiffs are correct that the FOIA statute prescribes a statutory time period in which to make the decision whether to release a document, it is unrealistic to believe that an agency could gather, review, and release the volume of materials at issue in this case within the statutory time limits. The fact that it failed to do so does not demonstrate that plaintiffs were singled out

for different treatment or that NPS acted in bad faith.

 Plaintiffs' final contention is that NPS delayed production of documents that were already prepared for release. As an example, plaintiffs point to the September 16, 1994 letter in which Mr. O'Brian stated that he had some of the photographs requested by plaintiffs and that when he received the rest of the photographs, he would forward them all to plaintiffs in one package. Mr. O'Brian sent the photographs on November 3, 1994.

As previously discussed, delay in producing documents does not in and of itself justify an award of attorney's fees. See, e.g., Simon, 587 F.Supp. at 1032. The fact that Mr. O'Brian held the first set of photographs until he received the remainder does not demonstrate bad faith, particularly since he notified plaintiffs that he was in possession of a portion of the photographs. If plaintiffs needed the photographs immediately, they could have so advised Mr. O'Brian. See Murty v. Office of Personnel Management, 707 F.2d at 816 (suggesting that litigation was unnecessary when a simple telephone call would have produced the desired result). Accordingly, this claim is without merit.

### III. RECOMMENDATION

Plaintiffs have not established that they are entitled to an award of attorney's fees. Accordingly, plaintiffs' renewed motion for an award of costs and attorney's fees should be denied.

Copies of the foregoing Report and Recommendation are being mailed to the parties, who are hereby notified that they have the right to object to the Report and Recommendation. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections

---

**10.** The regulation provides as follows: "A decision to withhold a requested record, to release a record that is exempt from disclosure, or to deny a fee waiver shall be made only after consulta-tion with the office of the appropriate associate, regional, or field solicitor." 43 C.F.R. § 2.16(a)(4) (1994).

may constitute a waiver of those objections on subsequent appellate review.

DATED this 21st day of March, 1996.