E.M. WHEELER, Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

Civ A. No. 97–167.

United States District Court, W.D. Pennsylvania.

Sept. 25, 1998.

408

Jessica Lieber Smolar, United States Attorney's Office, Pittsburgh, PA, R. Scott Clarke, United States Department of Justice, Washington, DC, for Internal Revenue Service.

E.M. Wheeler, Linesville, PA, for E.M. Wheeler.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

This is a civil action filed under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 against the Internal Revenue Service (IRS). Plaintiff filed this action seeking declaratory and injunctive relief including a court order for the IRS to turn over the records he requested, monetary damages for unauthorized disclosure of return and return information, and attorney fees and costs of litigation. The only issue that remains is whether the plaintiff is entitled to attorney fees and costs of litigation. For the reasons set forth below, he is not.

## I. BACKGROUND

Plaintiff, E.M. Wheeler, made eleven written requests under the FOIA between October 28, 1996 and December 5, 1996 for information regarding his own tax records. The requests sought information pertaining to the years of 1982 through 1996 including (1) all documents maintained in the Individual Master File (IMF) System, (2) documents regarding a Notice of Intent to Levy, (3) documents contained in Collection Case File and Unit Ledger Cards, and (4) documents regarding a Notice of Assessment and Demand for Payment.

### A. Requests for IMF Transcripts

Initially, the defendant responded to some of the requests but failed to respond to others. By letter dated October 28, 1996, the plaintiff requested IMF transcripts from two systems of records: Individual Master File Complete for Data Services–Treasury/IRS, 24.030 and Individual Master File TIF Transcript—Complete for Data Services–Treasury/IRS, 24.030. The request was handled by a Disclosure Specialist for the IRS's Service Center in Philadelphia. He ordered the first type of IMF transcript almost immediately after receiving the request and sent a letter on December 19, 1996 enclosing the transcripts. (Epstein Decl. at 2–3.) Nearly a year later, after learning of this law suit and being asked by counsel to review the complaint, the Specialist "realized that [he] had failed to provide plaintiff with the requested copies of his Individual Master File (IMF) Taxpayer Information File (TIF) transcripts." (*Id.* at 3.) He then requested those transcripts and faxed them to counsel for disclosure to the plaintiff. (*Id.* at 4)

### B. Requests for Notice of Intent to Levy

The plaintiff also wrote six different letters, the first dated October 30, 1996 and the last dated December 5, 1996, to the Philadelphia, Pittsburgh and Bensalem offices requesting a copy of the Notice of Intent to Levy as well as the notice list, error list, a copy of the list of notices pulled from the mailing, the mail log containing plaintiff's name and address and "any other documentation which would establish that the notice of intent to levy was sent." (Compl.Exh.I) The request was assigned to the Disclosure Specialist for the Service Center in Philadelphia as well as the Disclosure Specialist for the Pennsylvania District.

The Philadelphia Disclosure Specialist responded by letter dated January 15, 1997 which indicated that the notices of levy for the years 1983 through 1986 were computer generated documents and copies were not retained. (Epstein Decl.Exh. E.) He also suggested in the letter that the plaintiff direct his request to the Pittsburgh Office. (*Id.*) The Philadelphia Disclosure Specialist also asked for searches to be conducted in the warehouse; according to him, the searches came up empty. (Epstein Decl. at 6.)

A Disclosure Specialist for the Pennsylvania District was also assigned to the plaintiff's request for a copy of the Notice of Intent to Levy. After review of the requests, she determined that the documents requested would be housed with the Collection Division and forwarded a copy of the requests to the Functional Disclosure Coordinators in the Philadelphia and

Pittsburgh Collection Division offices. (Leib Decl. at 3–4) The Functional Disclosure Coordinator in Philadelphia told the Pennsylvania District Disclosure Specialist the case had yet to be assigned to the Collection Division. (*Id.* at 4) The Coordinator in Pittsburgh was not as forthcoming. Although the Pennsylvania Specialist contacted him on four occasions, he did not respond until the Specialist mentioned in her last phone call that an FOIA law suit had been filed. (*Id.* at 4–5) Thereupon, he found a collection file and forwarded it to her. (*Id.* at 5) She then sent it to counsel with her recommendations for disclosure. (*Id.* at 6)

The Pennsylvania District Specialist also learned in February of 1997 that an examination file existed in Pittsburgh. (*Id.* at 4) After receiving a copy of it, she determined that it contained no documents responsive to the plaintiff's requests. (*Id.* at 4–5) Finally, the Pennsylvania Specialist received a call on December 1, 1997 from the Assistant Chief Counsel for Disclosure Litigation who indicated that there were boxes of documents from the Pittsburgh Disclosure Office (which merged into the Pennsylvania Office) which might be responsive. (*Id.* at 6) She reviewed the documents and found two responsive pages including a copy of a Final Notice of Intent to Levy dated July 15, 1993. (*Id.* at 6–7) She forwarded the documents to counsel for disclosure on December 17, 1997. (*Id.* at 7)

## C. Request for Collection Case Files, Unit Ledger Cards and MARS Transcripts

The plaintiff also requested in three different letters, dated October 31, 1996, November 25, 1996, and December 5, 1996, a copy of the Collection Case File, Unit Ledger Cards and Manual Accounting Replacement System records (MARS). (Compl.Exhs. D, E, and F) Both the Philadelphia and Pennsylvania offices responded to this request. The Disclosure Specialist in the Pennsylvania District forwarded the request to the Functional Disclosure Coordinator of the Collection Division in Pittsburgh along with the request for the Notice of Intent to Levy. (Lieb Decl. at 4) As mentioned above, the coordinator did not respond to the Pennsylvania Specialist's inquiries until after the law suit was filed. (*Id.* at 5)

A Disclosure Assistant in the Philadelphia Service Center also responded to this request. She contacted the accounting branch and requested the MARS transcripts which she says have replaced Unit Ledger Cards. (McCaughey Decl. at 3) An employee in the accounting branch performed a search and informed her that no records were responsive. (*Id.*) On November 20, 1996, she wrote to the plaintiff indicating him that no MARS transcripts were found and that the Collection Files request should be directed to the Pittsburgh office. (*Id.* Exh. C)

## D. Request for Notice of Assessment and Demand for Payment

Finally, the plaintiff wrote the Bensalem office of the IRS on November 25, 1996 requesting a copy of the Notice of Assessment and Demand for Payment, notice list, error list, list of notices pulled from the mailing list on the date of the notice, the mail log and "any other documentation which would establish that the notice of assessment and demand for payment was sent." (Compl.Exh.G) This request was also handled by a Disclosure Assistant for the Philadelphia Service Center. Although, according to the IRS, Notices of Assessment and Demand for Payment are not maintained by the IRS, she requested a copy of the IMF transcript because, according to her, it would indicate whether the IRS has issued such a notice. (McCaughey Decl. at 5) After receiving a copy, she highlighted the responsive portions and sent them to plaintiff with a cover letter dated December 23, 1996. (*Id.*)

The plaintiff filed a law suit pro se on June 6, 1997 alleging that the IRS had not

fulfilled its duties under the Freedom of Information Act (FOIA) and requesting that this Court, among other things, order the defendant to turn over the requested documents, award damages to the plaintiff in the nature of sanctions, and award the plaintiff costs and attorney fees. The defendant has since responded to the plaintiff's requests by either turning over documents or claiming an exemption. This Court has since granted the defendant's motion for summary judgment and the only issue which remains is whether the plaintiff is entitled to attorney fees and litigation costs.

## II. DISCUSSION

5 U.S.C. § 552(a)(4)(E) authorizes the court to order the defendant to pay the plaintiff's attorney fees or litigation costs if the plaintiff substantially prevails in a suit under the Freedom of Information Act. *See id.* It provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *Id.* The plaintiff seeks both attorney fees and litigation costs.

### A. Attorney Fees

■ The plaintiff relies on several cases from the D.C. Circuit to argue that he is entitled to attorney fees. The Third Circuit, however, has held unequivocally that a pro see plaintiff is not entitled to such fees. The Court stated in *Cunningham v. F.B.I.*, 664 F.2d 383 (3d Cir.1981), "Guided by the language employed by Congress to allow attorney fee awards to FOIA litigants, and concerning the policies underlying that congressional decision, we conclude that non-lawyer pro se litigants may not be awarded attorney fees under the Freedom of Information Act for the services they provide to themselves." *Id.* at 387–88. *See also Wolfel v. United States,*

711 F.2d 66, 68 (6th Cir.1983); *Clarkson v. IRS,* 678 F.2d 1368, 1371 (11th Cir.1982); *Barrett v. Bureau of Customs,* 651 F.2d 1087, 1090 (5th Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982). Thus, since the plaintiff is a non-lawyer pro se litigant, he is not entitled to attorney fees.

### B. Litigation Costs

■ The plaintiff also asks the Court to award litigation costs arguing that if he had not filed this litigation, the IRS would not have released records responsive to his FOIA requests. The plaintiff correctly asserts that a pro se plaintiff can be eligible for litigation costs even if he or she cannot be awarded attorney fees. *See Cunningham,* 664 F.2d at 387 n. 4; *see also Merrell v. Block,* 809 F.2d 639, 641 (9th Cir.1987); *DeBold v. Stimson,* 735 F.2d 1037, 1043 (7th Cir.1984); *Clarkson,* 678 F.2d at 1371.

■ Although the Third Circuit has not addressed this issue, the vast majority of the other circuits have used a two part analysis to determine whether a plaintiff is entitled to litigation costs.[1] The first part of the inquiry is whether the plaintiff is eligible for litigation costs; if so, the court must ask whether the plaintiff is entitled to an award given certain equitable factors. *See Anderson v. Secretary of Health and Human Servs.,* 80 F.3d 1500, 1504 (10th Cir.1996); *Chesapeake Bay Found. v. U.S. Department of Agric.,* 11 F.3d 211, 216 (D.C.Cir.1993); *Maynard v. C.I.A.,* 986 F.2d 547, 568 (1st Cir.1993); *State of Tex. v. I.C.C.,* 935 F.2d 728, 730 (5th Cir. 1991); *Long v. U.S. I.R.S.,* 932 F.2d 1309, 1313 (9th Cir.1991); *Miller v. U.S. Department of State,* 779 F.2d 1378, 1389 (8th Cir.1985); *Westinghouse Elec. Corp. v. National Labor Relations Bd.,* 497 F.Supp. 82, 83–85 (W.D.Pa.1980).

### 1. Eligibility—"Substantially Prevailed"

■ An FOIA plaintiff is eligible for an award of litigation costs if he or she has

---

1. The test for whether the court should award a FOIA plaintiff litigation costs is the same as the test for whether attorney fees should be awarded.

"substantially prevailed" on his or her claim. *See Anderson,* 80 F.3d at 1504; *Chesapeake Bay,* 11 F.3d at 216; *Maynard,* 986 F.2d at 568; *Miller,* 779 F.2d at 1389. In order to be deemed to have substantially prevailed, however, the plaintiff does not necessarily have to point to a court ruling in his or her favor. *See GMRI, Inc. v. EEOC,* 149 F.3d 449, 451 (6th Cir.1998); *Miller,* 779 F.2d at 1389; *Aviation Data Serv. v. FAA,* 687 F.2d 1319, 1321 (10th Cir.1982); *Church of Scientology of CA v. Harris,* 653 F.2d 584, 587 (D.C.Cir.1981). However, "[t]he mere fact that the information sought was not released until after the suit was instituted without more is insufficient to establish that [plaintiff] substantially prevailed." *Lovell v. Alderete,* 630 F.2d 428, 432 (5th Cir.1980). Instead, in the absence of a favorable ruling, the plaintiff can establish that he or she substantially prevailed by showing (1) that filing suit was necessary to obtaining the information sought and (2) that it caused the defendant to turn over the information. *See GMRI,* 149 F.3d at 451; *Miller,* 779 F.2d at 1388; *Chilivis v. Securities & Exchange Commission,* 673 F.2d 1205, 1212 (11th Cir.1982) (quoting *Lovell v. Alderete,* 630 F.2d 428, 432 (5th Cir.1980)).

In *Chilivis v. Securities & Exch. Comm'n,* 673 F.2d 1205 (11th Cir.1982) and *Lovell v. Alderete,* 630 F.2d 428, 432 (5th Cir.1980), the Eleventh and Fifth Circuits determined the plaintiff was not eligible for attorney fees or litigation costs because the filing of suit did not cause the defendant to release the documents. *See Chilivis,* 673 F.2d at 1212; *Lovell,* 630 F.2d at 432. The Eleventh Circuit in *Chilivis* found that although most of the documents were released after the initiation of the suit, they were released not in response to the suit, but in response to the Justice Department's termination of an investigation and "the agency's correct perception that the documents were no longer exempt as investigatory records." *Chilivis,* 673 F.2d at 1212. Similarly, in *Lovell,* the Fifth Circuit found that "compliance with [plaintiff's] request for documents was not caused mainly by the institution of the suit, but rather was also affected by a change in the United States Attorney General guidelines concerning disclosure of exempted materials." *Lovell,* 630 F.2d at 432. *See also Ginter v. Internal Revenue Service,* 648 F.2d 469, 473 (8th Cir.1981).

Conversely, in *Miller v. U.S. Department of State,* 779 F.2d 1378 (8th Cir. 1985), the Eighth Circuit held that the plaintiffs were eligible for fees and costs. *See id.* at 1389. In *Miller,* the defendant repeatedly stated it had no or few responsive documents until the plaintiff filed suit. *See id.* at 1388–89. The court stated, "the conclusion seems inescapable that but for the plaintiff's persistent prosecution of his claim he would not have received the documents he did." *See id.* at 1388.

█ The plaintiff in this case claims that the documents would not have been released to him but for the litigation and if he had not sued, he would not know that certain documents were missing and do not exist. A review of the defendant's responses to each of the plaintiff's requests indicates that the plaintiff's assertion is correct. First, although the defendant provided one of the types of IMF transcripts promptly, it did not do so for the other; it was almost a year subsequent to the plaintiff's request and after the plaintiff filed suit that the Philadelphia Disclosure Specialist took action on the IMF–TIF transcripts. In fact, he admitted that it took counsel asking him to review the complaint to trigger his memory and get him to provide the transcripts.

Similarly, another IRS employee attempted in 1996 to obtain a Notice of Intent to Levy and Collection Case File for the plaintiff by contacting a Functional Disclosure Coordinator in Pittsburgh. She contacted him four times and it was not until the fourth time when she mentioned the law suit that the coordinator made an effort to locate the file. Further, after the initiation of the suit, the Assistant Chief

Counsel was able to find several boxes of documents from which a copy of the Final Notice of Intent to Levy was found and disclosed. Thus, since there is a causal relationship between the bringing of the suit and the release of the documents, the plaintiff has substantially prevailed on his claim.

### 2. Entitlement

■ A showing that the plaintiff substantially prevailed, however, merely establishes eligibility for and does not "automatically entitle the plaintiff to [costs]." *Church of Scientology v. U.S. Postal Serv.,* 700 F.2d 486, 489 (1983); *see Anderson v. Secretary of Health and Human Servs.,* 80 F.3d 1500, 1504 (10th Cir.1996); *Chesapeake Bay Found. v. U.S. Department of Agric.,* 11 F.3d 211, 216 (D.C.Cir.1993); *Miller v. U.S. Department of State,* 779 F.2d 1378, 1389 (8th Cir.1985). The court has discretion to determine whether the plaintiff is entitled to such fees and costs. *See id.* Four factors must be weighed to make this determination: "(1) the benefit to the public to be derived from the case; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records which he seeks; and (4) whether the government's withholding of the record had a reasonable basis in law." *Miller,* 779 F.2d at 1389; *see GMRI, Inc. v. EEOC,* 149 F.3d 449, 452 (6th Cir.1998); *Anderson,* 80 F.3d at 1504; *Chesapeake Bay,* 11 F.3d at 216.

■ The first three factors are very much interrelated. The primary purpose of the FOIA fee shifting provision "is to ensure that government is conducted in the open," *Miller,* 779 F.2d at 1389, by providing "a method of informing the public as to governmental operations." *Anderson,* 80 F.3d 1500, 1505 (10th Cir. 1996). The purpose is to create an incentive for organizations and individuals to file suit to force disclosure that is in the public interest by paying their fees and costs. Thus, the awarding of fees and costs is more appropriate when there is a public interest in the disclosure of the documents and less appropriate "[w]hen a litigant seeks disclosure for a commercial benefit or other personal reasons." *See Cotton v. Heyman,* 63 F.3d 1115, 1120 (D.C.Cir.1995).

The plaintiff's reasons for seeking disclosure of the requested documents appear to be purely personal, to challenge his own tax liability, rather than to benefit the public interest. One could argue that the public benefits greatly because law suits like this one impress upon the IRS the importance of complying voluntarily with the FOIA. However, even if this was one of the plaintiff's motivations, it was only secondary and moreover is not the type of benefit that Section 552(a)(4)(E) was intended to promote. *See Aviation Data Service v. F.A.A.,* 687 F.2d 1319, 1323 (10th Cir.1982) (stating that the disclosure must "assist the citizenry generally in making an informed judgment as to governmental operations;" minimal, incidental and speculative public benefit will not suffice); *Solone v. I.R.S.,* 830 F.Supp. 1141, 1143 (N.D.Ill.1993) (stating that the FOIA fee shifting provision was not intended to "encourage the IRS to be 'a little more cooperative in releasing documents'"). Rather, the public benefit factor focuses on the particular disclosures involved in the law suit and asks how those disclosures will benefit the public. The disclosures involved in this case benefit the plaintiff by enabling him to contest his personal tax liability. They are commercial and personal in nature and are not appropriate for the awarding of costs.

■ Finally, the reasons for the government's refusal to disclose are relevant to the balancing and may even be dispositive. The crucial question is whether the "Government's legal basis for withholding requested records is correct" or can at least be characterized as a "colorable basis in law." *Chesapeake Bay Found. v. U.S. Department of Agric.,* 11 F.3d 211, 216 (D.C.Cir.1993). If the Government's legal position is correct, then neither attorney

fees nor costs are recoverable, regardless of the other factors. *See id.* If it is found on a colorable basis in law, however, then that fact is merely weighed along with the other factors. *See id.*

The government in this case has not offered much in the way of a legal justification for failing to disclose the records prior to the plaintiff filing suit. Instead, the government has offered administrative difficulties as the primary explanation. According to testimony of the government employees, the IMF–TIF transcripts were not disclosed until after the suit was filed because one employee simply forgot about or overlooked that half of the plaintiff's request; the complaint apparently served as a reminder. The response to the request for the Notice of Intent to Levy and Collection Case Files, at least that which was directed toward the Pennsylvania District office, was very similar, if not more troubling. The Functional Disclosure Coordinator in Pittsburgh appears to have ignored or put the request from his colleague on the back burner until the complaint was filed, upon which time he located some files. Finally, the delay in searching the boxes connected with previous FOIA requests, which turned up two responsive documents including the Notice of Intent to Levy, is explained by the confusion associated with the merger between the Pittsburgh office and the Pennsylvania District office.

The administrative explanations for the delay in disclosure of the documents indicate a lack of even a colorable basis in law; in fact, they indicate that the government unreasonably withheld the records. The question becomes whether an unreasonable withholding is dispositive in the plaintiffs favor or whether it still must be weighed with the other factors.

 As many courts have recognized, the reasonable basis factor, in addition to protecting the government when it can claim a reasonable legal basis, is also intended to protect plaintiffs who have been victim of "recalcitrant or obdurate behav-ior" on the part of the government responding to FOIA requests. *See Tax Analysts v. United States Department of Justice,* 965 F.2d 1092, 1097 (D.C.Cir.1992) (stating that "the reasonable-basis-in-law factor is intended to weed out those cases in which the government was 'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'") (quoting *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1366 (D.C.Cir.1977)). In this court's view, it is this type of behavior, rather than merely a lack of a reasonable basis, that can make the last factor dispositive without consideration of any of the other factors. In other words, it is this type of behavior that can allow a court to overlook a complete lack of public benefit. Absent such bad faith or recalcitrant or obdurate behavior, however, the lack of a reasonable basis for withholding requested documents must be weighed against the other three factors. *See Horsehead Indus., Inc. v. United States Envtl. Protection Agency,* 999 F.Supp. 59, 65 (D.D.C.1998) (stating "the weight of the case law suggest that all four factors are to be considered and—depending on the facts of the case—even when a court finds that the Government has unreasonably withheld documents, it may still decline to award attorneys' fees to the plaintiff"); *see also Local 598 v. Department of Army Corps of Eng'rs,* 841 F.2d 1459, 1464 (9th Cir.1988) (holding that the government did not have a reasonable basis to withhold but remanding for a balancing of all the factors).

In *Horsehead Industries, Inc. v. United States Environmental Protection Agency,* 999 F.Supp. 59 (D.D.C.1998), the District Court for the District of Columbia balanced the four factors in a situation much like the one presented in this case. There, the government withheld "more than 10,-000 pages of documents that undisputedly [did not] fall within any FOIA exemption." *Id.* at 65. It did this apparently because it felt that the documents "fell outside the ambit of Horsehead's FOIA request." *Id.* at 66. The court disagreed, holding that

the government lacked a reasonable basis for withholding the documents because it was required under the FOIA to read the request broadly rather than narrowly. *See id.* at 67. However, the court found that the withholding was not done in bad faith, nor was the government "recalcitrant or obdurate in its opposition to Horsehead's requests." *Id.* at 66.

Before performing the balancing, the court held that while the lack of a reasonable legal explanation for withholding the documents "weighs in favor of a fee award, . . . it must be balanced against the other factors; [the government's] behavior here simply was not mulish enough to require slapping on it the costs of Horsehead's attorneys' fees without consideration of the other factors." *Id.* at 68. As to those other factors, the court held that the public benefit was minimal and the plaintiff "brought [the] suit to advance its private, commercial interest and that it would have brought the suit regardless of the availability of fees. With respect to these factors, this is precisely the kind of case in which an award of attorneys' fees would serve as an inappropriate windfall. As a result, these combined factors weigh very heavily against a fee award." *Id.* at 69.

██ As an initial matter, this court finds that the government did not engage in recalcitrant or obdurate behavior and was not in bad faith. It is troubling that it took the filing of a complaint to refresh one employee's memory as to the IMF–TIF transcripts and catch the attention of another with regard to the Collection Case Files, but neither shows bad faith on the government's part. The declarations by the IRS employees, despite these administrative difficulties, indicate some diligence and care in responding to the plaintiff's requests. Some of them went to great lengths to locate responsive documents, some even looked for alternative sources containing the same information despite the fact that such sources were not requested. Thus, because there was no recalcitrant or obdurate behavior and the

government was not in bad faith, the fact that the plaintiff requested the documents for his own personal and commercial benefit and not for any particular public benefit must be weighed against the lack of a reasonable legal explanation by the government for delaying its disclosure until after the plaintiff filed suit.

██ As the court in *Horsehead* recognized, the purpose of the FOIA is to provide an incentive for potential plaintiffs to bring a suit which would inform the public about the nature of governmental operations. *See Tax Analysts v. United States Department of Justice,* 965 F.2d 1092, 1095 (D.C.Cir.1992); *Aviation Data Serv.,* 687 F.2d 1319 (10th Cir.1982); *Horsehead,* 999 F.Supp. at 68. It is not intended to subsidize or otherwise benefit private litigants and did not seek to promote the general public benefit of "bringing the government into compliance with the FOIA." *Ellis v. United States,* 941 F.Supp. 1068, 1078 (D.Utah 1996); *see Aviation Data Serv.,* 687 F.2d at 1323; *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir.1978). It is to "assist the citizenry generally in making an informed judgment as to governmental operations." *Aviation Data Serv.,* 687 F.2d at 1323. Were the plaintiff's suit here to in any way advance this purpose, the balance would clearly tip in his favor; he would not only be able to claim some particular public benefit but be able to add to that the disturbing administrative failures of the government. Instead, however, like the plaintiff in *Horsehead,* this plaintiff has brought this suit merely to advance his own personal agenda—to challenge his tax liability.

As stated above, the government's administrative difficulties are troubling; however, their unreasonableness is ultimately outweighed by the complete absence of a public benefit. This result is supported even further by the fact that the documents were eventually produced so that the "plaintiff's challenge [has become one concerning] the government's delay in releasing the records rather than its sub-

stantive claims of exemption." *Ellis,* 941 F.Supp. at 1080.

In *Ellis v. U.S.,* 941 F.Supp. 1068 (D.Utah 1996), to prepare for the launch of a $24.5 million suit under the Federal Tort Claims Act, the plaintiffs requested various documents under FOIA that related to the drowning of two hikers in Zion National Park. Although the government initially turned over some documents, it withheld most of the documents for various reasons including clerical error, improper assertion of exemptions and what the government called "unavoidable delay in the administrative process" due to the volume of FOIA requests. *See id.* at 1078. Almost four months after mailing the FOIA requests, the plaintiffs filed suit under FOIA and the FTCA. Thereafter, the government began producing many of the documents earlier withheld but the plaintiffs filed a motion for fees and costs.

After holding that the plaintiffs had substantially prevailed, the court balanced the four factors. It stated that the benefit to the public was very minimal, stating, "[a]lthough there may have been some slight public benefit in bringing the government into compliance with FOIA and providing information of general interest to the public, the disclosure of the records did not add to the fund of information necessary to make important political choices." *Id.* at 1078. Rather, the court held, the plaintiffs sought the information only for their own personal benefit. *See id.* ("[I]t appears that plaintiffs had an adequate personal motive to seek judicial relief in the absence of the incentive of an award of attorney's fees."). Thus, finding, as this court does, that the plaintiffs filed the FOIA suit only for their own personal benefit and not for that of the public, the court turned its attention to the reasonable basis in law factor.

The plaintiffs argued that the reasonable basis factor weighed heavily in their favor because the government had no basis in law for withholding most of the documents until after plaintiffs filed suit. The court responded, stating that since the government had already turned over most of the documents, albeit after the suit was filed, the plaintiff's quarrel was with "the government's delay in releasing the records rather than its substantive claims of exemption." *Id.* at 1080. Thus, the court held, with a challenge which is merely to the delay in the releasing of FOIA records, "the reasonableness factor does not favor a fee award so long as the government did not engage in obdurate behavior or bad faith." *Id.* Since the government was not in bad faith in that it did not "purposely delay[ ] its FOIA response to prevent embarrassment or to thwart the requester," the court refused to grant the plaintiff fees or costs, even stating that "the fourth factor ... weighs against an award of fees." *Id.* at 1081.

Just like in *Ellis,* Mr. Wheeler's dispute, which does not in any way benefit the public, has been mooted and become one over the delay in releasing documents. Thus, given that Mr. Wheeler cannot show bad faith or recalcitrant or obdurante behavior, the lack of a public benefit and the fact that the defendants were eventually turned over voluntarily by the government outweigh the lack of a reasonable basis in law such that the plaintiff's motion for litigation costs is denied.

## III. CONCLUSION

For all of the foregoing reasons, the plaintiff's motion for attorney fees and costs is denied.