The **FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 11–CV–545.

District of Columbia Court of Appeals.

Argued April 24, 2012.
Decided Aug. 23, 2012.

Paul A. Fenn, with whom Barbara E. Duvall, Baltimore, was on the brief, for appellant.

Mary L. Wilson, Senior Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and FISHER and EASTERLY, Associate Judges.

EASTERLY, Associate Judge:

This case requires us to determine whether a party who prevails in a Freedom of Information Act [1] (FOIA) lawsuit is automatically entitled to attorney's fees under that statute, and, if not, what criteria a trial court should consider when determining whether to award fees. Although the District of Columbia's FOIA statute became law almost forty years ago, we have never addressed this issue. By contrast, the jurisprudence in the federal courts on federal FOIA fee awards is well-developed and largely uniform: attorneys for prevailing parties are not automatically entitled to fees, and courts employ a four-

---

1. D.C.Code §§ 2–531 to –540 (2010 Supp.).

factor balancing test in determining whether to award fees. The federal FOIA is different from and, in some respects, less demanding of government agencies than the D.C. FOIA. Nonetheless, we conclude that, as under the federal FOIA, fee awards under the D.C. FOIA are committed to the sound discretion of the trial courts, and that, in light of the parallel objectives of the D.C. and federal FOIAs, the exercise of that discretion is appropriately guided by the same four-factor test employed by federal courts when considering whether to grant fee awards. Thus we conclude that the trial court in this case did not err when it used the federal four-factor test to analyze the Fraternal Order of Police's (FOP's) request for attorney's fees after it prevailed in a lawsuit against the District under the D.C. FOIA. Nor did the trial court abuse its discretion when, after evaluating each of the four factors in this test, it denied the FOP's request for fees.

## I. Factual Background

This case arises out of a request by the FOP, a union representing 3600 Metropolitan Police Department officers, for the production of Metropolitan Police Department (MPD) emails related to the union. On May 27, 2009, the FOP submitted a joint FOIA request to the MPD and the Office of the Chief Technology Officer (OCTO), the technology arm of the District government, in which the FOP asked for production of all emails sent to or from Police Chief Cathy Lanier and her assistant chiefs, referencing either the union or its chairman, Kristopher Baumann. On June 11, 2009, the FOIA officer at OCTO responded by fax to the FOP's request and represented that, pursuant to a 2008 order from the Mayor, OCTO could not begin searching for the requested emails until it received a request from "an authorized person within the D.C. government." The OCTO FOIA officer further stated that, upon conducting such a search, OCTO would have to "provide the results ... to the MPD requester, who will then transmit them to you."[2] Subsequent to this June 11 fax, the FOP received no further communications from OCTO.[3] The FOP never received any response to its FOIA request from MPD.

Four months later, on September 16, 2009, the FOP sued the District of Columbia for constructive denial of its FOIA request.[4] In its answer, the District perfunctorily denied that it had violated FOIA. It gave no indication that it was processing the FOP's request with an intent to fulfill it.

On March 9, 2010, nearly ten months after the FOP made its FOIA request, it moved for summary judgment. In its opposition, the District for the first time indicated that it was working on the FOP's request. It noted that MPD had sent a

---

2. This order requires OCTO to "refer" the FOIA request to the agency that is the subject of the FOIA request and then to produce all responsive material to that agency. Mayor's Order 2008–88. We do not address whether OCTO correctly interpreted this order as directing it to do nothing unless and until instructed to conduct a search for responsive documents by the agency that is the subject of the request.

3. Pursuant to D.C.Code § 2–532(c) (2006 Supp.), any District agency that receives a FOIA request must reply to the request within

fifteen business days, either by producing the requested record or by providing an explanation why it is not producing the requested record. Section 2–532(d) allows an agency to extend the fifteen-day limit an additional ten days, but only under "unusual circumstances."

4. See D.C.Code § 2–532(e) ("Any failure on the part of a public body to comply with [such] a request ... shall be deemed a denial of the request, and the person making such request shall be deemed to have exhausted his administrative remedies....").

"formal email search request" to OCTO, had received almost 4,000 responsive emails, and objected to the breadth of the FOP's search terms. The District also blamed the FOP for not making further inquiries into the status of its request, and complained about a lack of resources. Lastly, the District announced that it would provide the FOP with an "interim, partial" production in April, but it would not be able to fully comply with the FOIA request until August 16, 2010—almost fifteen months after the FOP made its request. The FOP received two productions of documents in April 2010—1,329 pages in all, which, according to the District, represented about fifty percent of documents responsive to the FOP's request.

On June 4, 2010, the trial court held a hearing on the FOP's motion for summary judgment. At the hearing, the District accelerated its timetable for full production by two months, from August 16 to June 14. In consideration of this commitment, the trial court reserved judgment on the FOP's motion. The June 14 deadline came and went, however, with no further document production by the District, and no communication to the FOP or the trial court.

█ The parties returned to court on July 6, 2010. At that point, the District explained that, "just several days before the June 14 deadline," it had realized it "needed to start all the work [on the FOP's FOIA request] over again." [5] The District also represented that it did not "feel comfortable turning over any subpart of the production" without a *Vaughn* index.[6] Observing that the District had exercised "bad judgment" in making productions and that "[a]t some point you can't keep missing deadlines," the trial court granted summary judgment in favor of the FOP. The court ordered the District to produce all outstanding responsive material by August 14, 2010.[7]

In its complaint and its motion for summary judgment, the FOP had requested attorney's fees and costs under D.C.Code § 2–537(c). The trial court asked for additional briefing on this request after ruling on the FOP's summary judgment motion. In response, the District conceded that the FOP was eligible for an award of attorney's fees under the statute, but argued that the FOP was not entitled to the award under the criteria used by federal courts when applying the federal FOIA provision addressing fee awards, 5 U.S.C. § 552(a)(4)(E). In response, the FOP agreed with the District that the trail court had to conduct a "two-step substantive inquiry" to determine if the FOP was both eligible and entitled to fees. The FOP argued that, as the substantially prevailing party, it was eligible for attorney's fees,[8] and that, under criteria set forth in

5. The District never explained why this was so.

6. A *Vaughn* index "itemiz[es] each item withheld, the exemptions claimed for that item, and the reasons why the exemption applies to that item." *Riley v. Fenty,* 7 A.3d 1014, 1018 n. 2 (D.C.2010) (quoting *Lykins v. United States Dep't of Justice,* 725 F.2d 1455, 1463 (D.C.Cir.1984)) (internal quotation marks omitted). The District eventually produced responsive documents (see note 7, *infra*) without a *Vaughn* index.

7. According to the District, it produced over 13,000 pages of material by July 20, 2010— that is, in just over one month, counting from mid-June when the MPD had to "start all the work over again." According to the Superior Court docket, litigation about the sufficiency of the District's subsequent production is ongoing.

8. The FOP mistakenly invoked the federal FOIA eligibility language—"substantially prevailed," 5 U.S.C. § 552(a)(4)(E)(i) (2009 Supp.)—instead of the D.C. FOIA eligibility language—"prevail in whole or part,"

federal case law, it was also entitled to fees. Applying the same federal criteria endorsed by both parties, the trial court declined to award the FOP attorney's fees. The court denied the FOP's motion to reconsider, rejecting the arguments that the court had misapplied the federal factors, and alternatively that the trial court's discretion was not constrained by those factors. This appeal followed.

## II. Standard of Review

This case presents preliminary questions of law: must a trial court automatically grant attorney's fees to a prevailing party in a FOIA suit, and, if not, what criteria should a trial court consider in determining whether to award attorney's fees? We review these questions *de novo* in Sections III and IV. *See In re T.H.*, 898 A.2d 908, 911 (D.C.2006) ("Whether the trial court applied the proper legal standard is a question of law subject to *de novo* review.").

Having determined that fee awards are discretionary and having identified the proper criteria for a trial court to consider in making fee awards, we review for abuse of discretion, in Section V, the trial court's denial of the FOP's fee request in this case. *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986) (noting that the "disposition of [attorney's fees] motions is firmly committed to the informed discretion of the trial court"); *see also Malik Corp. v. Tenacity Group, LLC,* 961 A.2d 1057, 1063 (D.C.2008) (attorney's fees rulings reviewed for abuse of discretion).

## III. A Prevailing Party Is Not Automatically Entitled to Fees Under the D.C. FOIA

First, we reject the FOP's argument on appeal that, by virtue of "prevailing in whole or in part" in its suit against the District, it was automatically entitled to fees under D.C.Code § 2–537(c) and did not need to "satisfy any additional criteria to demonstrate its entitlement to an award of reasonable attorneys' fees and costs." This argument is not only unpreserved, it is a stark departure from the argument the FOP made in the trial court.[9] When directed to explain why it was entitled to attorney's fees, the FOP initially agreed with the District that the trial court was obligated to conduct a "two-step substantive inquiry" to determine if the FOP was both eligible and entitled to fees, and that, in analyzing the FOP's entitlement, the trial court should use the criteria set forth in federal case law analyzing the analogous fee provision in the federal FOIA. Only after the trial court denied its fee request did the FOP argue in a motion for reconsideration that the trial court, in exercising its discretion, need not apply the federal criteria at all. Even at that juncture, the FOP did not argue that it was automatically entitled to a fee award in light of its success on summary judgment.[10]

■■■ In any event, the FOP's new interpretation of the law on appeal is foreclosed by the plain language of the statute. Section 2–537(c) of the D.C.Code provides: "If a person seeking the right to inspect or to receive a copy of a public record prevails in whole or in part in such suit, he or

---

D.C.Code § 2–537(c) (2007 Supp.). *See also Riley,* 7 A.3d at 1020 (noting the distinction).

9. *See District of Columbia v. Wical Ltd. P'ship,* 630 A.2d 174, 182 (D.C.1993) ("In general, parties may not assert one theory at trial and another on appeal.") (internal quotation marks omitted).

10. The FOP asserts in its brief to this court that "[t]hroughout the entire case, it was always the FOP's position that it was entitled to its attorneys' fees and costs simply by virtue of the fact that it was the prevailing party." This assertion is unsupported by the record.

she *may* be awarded reasonable attorney fees and other costs of litigation." (Emphasis added.) Like fee provisions in other statutes [11] and the federal FOIA,[12] this provision is expressly permissive and contemplates a determination of both eligibility and entitlement. *See In re Langon,* 663 A.2d 1248, 1250 (D.C.1995) ("Use of the word 'may' in a statute ordinarily denotes discretion."); *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991) (" '[M]ay' … is quintessentially permissive."). "Although in the final analysis, the meaning of the word 'may' in a particular statute depends on the context of the statute, and on whether it is fairly to be presumed that it was the intention of the legislature to confer a discretionary power or to impose an imperative duty," *Langon,* 663 A.2d at 1250 (internal quotation marks omitted), the legislative history of the fee award provision leaves us with no doubt that "may" has its ordinary permissive meaning. An earlier draft of the legislation that became D.C. FOIA provided that a party who prevailed "in whole" "*shall* be awarded reasonable attorneys fees," and that a party who prevailed "in part" "may" receive discretionary fee awards. 21 D.C.Reg. 3612 (1975). The statute retained the reference to parties who prevailed "in whole or in part," but the Council deleted the mandatory award

language—"shall"—and made the award of fees uniformly permissive. "An Amendment in the Committee on the Judiciary and Criminal Law by Councilmember David A. Clarke," (Sept. 1, 1976) *reprinted in Freedom of Information: A Compilation of State Laws,* 95th Cong., 2d Sess. 17 (1978) (hereinafter *Freedom of Information* ).

Having determined that the D.C. FOIA, like the federal FOIA, "does not provide … for an automatic award of attorney fees to every successful FOIA plaintiff," but rather "contemplates a reasoned exercise of the courts' discretion," *Nationwide Bldg. Maint., Inc. v. Sampson,* 559 F.2d 704, 705 (D.C.Cir.1977), we discuss how that discretion should be exercised.

## IV. Whether a Prevailing Party Is Entitled to Attorney's Fees Under the D.C. FOIA Turns on the Same Factors Considered by Federal Courts in Federal FOIA Cases

■ Although this is a question of first impression in the District,[13] federal jurisprudence addressing when fee awards are appropriate under the federal FOIA is well-developed. Once it is established that a party is eligible to receive attorney's

---

11. *See, e.g.,* D.C.Code § 16–911(a)(1) (2008 Supp.) ("During the pendency of an action for divorce … the court *may* … require the spouse or domestic partner … to pay suit money, including counsel fees, to enable such other spouse to conduct the case.") (emphasis added); *Maybin v. Stewart,* 885 A.2d 284, 288 (D.C.2005) (noting that fee awards under § 16–911 of the D.C.Code are committed to the informed discretion of the trial court).

12. 5 U.S.C. § 552(a)(4)(E)(i) (Supp.2009) ("The court *may* assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.") (emphasis added). Federal courts have uniformly interpret-

ed the federal provision to make prevailing parties eligible, but not automatically entitled, to receive attorney's fees. *Aviation Data Serv. v. Fed. Aviation Admin.,* 687 F.2d 1319, 1321 (10th Cir.1982) (citing cases).

13. We have addressed whether a FOIA requester who sues the District *pro se* is entitled to fees, *McReady v. Dep't of Consumer & Regulatory Affairs,* 618 A.2d 609, 612–15 (D.C. 1992); *Donahue v. Thomas,* 618 A.2d 601, 605–07 (D.C.1992), and examined what it means to prevail in whole or in part, *Riley,* 7 A.3d at 1020–21, but we have not addressed the factors a trial court should consider when determining if a FOIA litigant who prevails in whole or in part should receive attorney's fees.

fees, a trial court evaluating a party's entitlement to fees must, at a minimum, consider four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1093 (D.C.Cir.1992).

■ This court is not bound by federal courts interpreting federal law, but we generally "consider[ ] applicable federal court precedent as persuasive authority when interpreting a local provision that is substantially patterned on a federal statute." *Benefits Comm'n Corp. v. Klieforth*, 642 A.2d 1299, 1303–04 (D.C.1994).[14] Passed ten years after the federal FOIA, and two years after the federal FOIA was amended, the D.C. FOIA was inspired by and modeled on the federal legislation.[15] Like the federal FOIA, it "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such official information from possibly unwilling official hands." *Washington Post Co. v. Minority Bus. Opportunity Comm'n*, 560 A.2d 517, 521 (D.C.1989); *see also* D.C.Code § 2–531 ("the public policy of the District of Columbia is that all persons are entitled to full and complete information regarding the affairs of government and the official

acts of those who represent them as public officials and employees"). The fee award provision of the D.C. FOIA in particular "is patterned after, and substantially the same as, that contained in the federal FOIA." *McReady*, 618 A.2d at 613. That said, a review of the history of the passage of the federal and D.C. FOIA attorney's fees provisions reveals that they evolved somewhat differently. We detail that evolution below and conclude that, their different histories notwithstanding, Congress and the District of Columbia Council ended up in the same place vis-à-vis fee awards: in favor of conferring on trial courts discretion to award fees where such awards promote the open-government objectives of the statute, objectives that are pursued in the federal four-factor test.

The federal FOIA was initially passed without a provision for the award of attorney's fees. However, "oversight hearings held in 1971 and 1972 brought to light substantial 'foot-dragging' on the part of administrative officials who invoked every conceivable delaying technique and forced citizens requesting information under the FOIA to resort to expensive litigation for vindication of their statutory rights." *Nationwide Bldg. Maint.*, 559 F.2d at 710. When Congress amended the statute in 1974, it added an attorney's fees provision. The Senate Report for the FOIA Amendments noted that this provision "was seen by many witnesses as crucial to effectuat-

14. We have also "adopted a rule of statutory construction which provides that when a local law is borrowed from a federal statute, it is presumed that [the preexisting] judicial construction of the federal statute is borrowed as well." *McReady*, 618 A.2d at 615. We look to the decisions of the Supreme Court and the D.C. Circuit. *See Donahue*, 618 A.2d at 601 n. 3. In this case, we do not rely on this presumptive borrowing since D.C. Circuit opinions interpreting the entitlement prong of the federal FOIA fee provision and adopting the four-factor test post-date the passage of the D.C. FOIA. *Compare* Freedom of Information

Act of 1976, Pub.L. 90–614, title II, § 201 (codified as amended at D.C.Code §§ 2–531 to –540), *with Nationwide Bldg. Maint.*, 559 F.2d at 714 (1977 opinion endorsing reliance on this four-factor test).

15. The District of Columbia Council's Committee on the Judiciary and Criminal Law "carefully compared the provisions of the federal act and its recent amendments ... [with] the provisions of [the proposed D.C. FOIA] as introduced." D.C. Council, Report on Bill 16–205 at 3 (Sept. 1, 1976).

ing the original congressional intent that judicial review be available to reverse agency refusals to adhere strictly to the Act's mandates." S.Rep. No. 93–854, at 19 (1974). As the D.C. Circuit explained in *LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 484 (1980), "Congress clearly intended the award of fees [under the amended federal FOIA] to serve two separate and distinct FOIA objectives": "to encourage Freedom of Information Act suits that benefit the public interest" and to compensate litigants who "endur[ed] an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." *Accord Cazalas v. United States Dep't of Justice*, 709 F.2d 1051, 1057 (5th Cir.1983) (federal FOIA fee provision "acts as an incentive for private individuals to pursue vigorously their claims for information . . . [and] serves a deterrent and, to a lesser extent, a punitive purpose. . . . [It] is designed to deter the government from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable").

Both the House and Senate versions of the fee provision made the award of fees discretionary, but the Senate draft also listed four factors—the same four factors later adopted by federal courts—to guide trial courts' decision-making in awarding fees. S.Rep. No. 93–854, at 19; S. Conf. Rep. No. 93–1200 at 4 (1974). The Senate Report explained how the four factors could be used to assess whether the twin objectives of FOIA fee awards would be served. The first three factors focused on the public's interest in the litigation;[16] the fourth factor focused on the need to penalize and compensate for government obduracy:

Under the first criterion [whether the public derived benefit from the case] a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.

Under the second criterion [the commercial benefit to the plaintiff] a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group . . . but would not if it was a large corporate interest (or a representative of such an interest). For the purposes of applying this criterion, news interests should not be considered commercial interests.

Under the third criterion [the nature of the plaintiff's interest in the records] a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature.

Finally, under the fourth criterion [the reasonableness of the agency's withholding] a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester. Whether the case involved a

---

16. *See Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C.Cir.2008) ("[T]he first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage. The former engage in the kind of endeavor for which a public subsidy makes some sense, and they typically need the fee incentive to pursue litigation; the latter cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate.").

return to court by the same complainant seeking the same or similar documents a second time should be considered by the court under this criterion.

S.Rep. No. 93–854, at 19; *see also Fenster v. Brown*, 617 F.2d 740, 743 n. 4 (D.C.Cir. 1979) (quoting same).

Although the four-factor test was merely "intended to provide guidance and direction—not airtight standards—for courts to use in determining awards of fees," *Fenster*, 617 F.2d at 743 n. 4 (quoting S.Rep. No. 93–854, at 19), it was ultimately deleted from the federal legislation out of concern that codifying it might unnecessarily limit a trial court's discretion in awarding attorney's fees. *Nationwide*, 559 F.2d at 711. Nevertheless, federal courts subsequently adopted these deleted factors as a guide for making fee awards. *Id.* at 714 (directing that "the [trial] courts should consider the four factors discussed in the committee reports" in determining whether to award fees); *Fenster*, 617 F.2d at 742 n. 4 (citing cases from other circuits).

The D.C. FOIA was passed in the wake of the passage of the 1974 amendments to the federal FOIA. D.C. Council, Report on Bill 16–205 at 3. D.C. FOIA might have become law sooner but for a commitment by the then Mayor–Commissioner to establish a FOIA-like policy at the local level. *Id.* The inadequacy of this policy became the impetus for the passage of the D.C. FOIA. *Id.* In assessing the need for a FOIA statute, the District of Columbia Committee on Judiciary and Criminal Law found "a disturbing record of government inertia [and] in some instances, deliberate noncompliance" with the Mayor's policy. *Id.* at 5. The implementation of the fee provision was part of a broader set of enforcement mechanisms, including authorizing FOIA requesters to sue the District, which were intended to bring recalcitrant agencies into compliance with the law. *See id.* at 1, 9, 15.

Comments in the legislative history on the fee provision are not extensive, but indicate that the D.C. FOIA fee provision was animated by the same concerns that resulted in the inclusion of a fee award provision in the 1974 amendments to the federal FOIA. Comments from the Committee on Government Operations stated that "Provisions ... [concerning fee-shifting] encourage citizens to seek the release of information wrongfully withheld by providing the award of attorney fees." "Comments of the Committee on Government Operations with regard to Bill No. 1–119, 'The Freedom of Information Act of 1975'" (May 1967) *reprinted in Freedom of Information* at 140. A submission from the D.C. Bar similarly noted that the fee provision would "encourage[ ] [citizens] to seek the release of information wrongfully withheld ... and should act to inhibit public bodies from forcing citizens to go to court except when there are legitimate reasons for nondisclosure." "Comments of D.C. Bar, Division I, Committee on Access to Government Information, regarding Bill No. 1–119: A Proposed Freedom of Information Act for the District of Columbia" (undated) *reprinted in Freedom of Information* at 109–10.

■ This history shows that, although Congress and the D.C. Council started in very different places with respect to fee award provisions—Congress omitting it entirely; the District Council including a mandatory fee award provision—they ended up in the same place. They both resolved to leave fee awards to the trial courts' discretion. Moreover, both were animated by a desire to promote open government and combat government resistance to the same. Given these parallel objectives, it makes sense then that the four factors initially identified by Congress

and subsequently adopted by the federal courts to guide discretionary fee awards so as to promote open-government and penalize government obduracy should likewise apply when trial courts are making fee award assessments under D.C. FOIA.

The FOP never argues to the contrary. Indeed, although the FOP urges this court to eschew the federal four-factor test, it fails to explain why consideration of (1) the public's interest in the litigation, (2) any commercial benefit or (3) private interest, and (4) the reasonableness of the government's response would ill-serve the District of Columbia. Instead the FOP urges us to reject the federal test for discretionary fee awards because of the various textual differences between the statutes.[17] The only difference of any arguable relevance is the difference in the fee provision sections of the federal and D.C. FOIAs. As noted above, see *supra* note 8, the statutes use different language to identify who is eligible to receive attorney's fees. Whatever its significance, this drafting difference has no bearing on who is entitled to receive fees. In short, the FOP fails to identify a difference in the fee award statutes that demonstrates that the District and the federal FOIAs' goals with respect to fee awards are unaligned.

Finally, even if we were inclined to reject the federal model, the FOP fails to present us with any alternative. The FOP argues that the trial court should not be restricted to the four federal criteria, but the FOP has never identified a factor that the trial court improperly declined to assess because it restricted itself to the federal test. Had the FOP requested consideration of an additional factor, the trial court would not have been precluded from considering it. Even under the federal case law, the four criteria are not exclusive,[18] and "the touchstone of a court's discretionary decision ... must be whether an award of attorney fees is necessary to implement the FOIA." *Nationwide,* 559 F.2d at 715. In the absence of any argument that the trial court's analysis was incomplete, we conclude that the trial court properly relied upon the federal four-factor test in assessing whether the FOP was entitled to receive attorney's fees in this case.

**V. The Court Did Not Abuse Its Discretion in Rejecting the FOP's Fee Request Under the D.C. FOIA**

The FOP argues in the alternative that, even if the trial court properly relied on the federal four-factor test in determining if a fee award was warranted in this case, it abused its discretion in analyzing and weighing those factors. In conducting our review of the trial court's ruling, we examine "whether the trial court failed to consider a relevant factor, whether it relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Jung v. Jung,* 844 A.2d 1099, 1108–09 (D.C.2004) (inter-

---

17. The FOP notes for example that the federal FOIA gives agencies a 20–day period to respond to a request, 5 U.S.C. § 552(a)(6)(A)(i), while the D.C. FOIA gives agencies only a 15–day period, D.C.Code § 2–532(c). Under the federal FOIA, agencies can seek to modify either the request or the time period with the requester under unusual circumstances. 5 U.S.C. § 552(a)(6)(B)(ii). By contrast, the D.C. FOIA limits any time period extensions to 10 days. D.C.Code § 2–532(d).

18. *Church of Scientology of California v. United States Postal Serv.,* 700 F.2d 486, 492 (9th Cir.1983) ("[T]he court may take into account whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate."); *Nationwide,* 559 F.2d at 714 (Courts should not "frustrate [Congress's] intent [not to overly restrict their discretion in making fee awards] by failing to search out and consider other factors that may be relevant to whether attorney fees should be awarded to a successful FOIA plaintiff.").

nal marks omitted). We do not "render [our] own decision of what judgment is most wise under the circumstances presented. Rather, [we] examine[ ] the record and the trial court's determination for those indicia of rationality and fairness that will assure [us] that the trial court's action was proper." *Johnson v. United States*, 398 A.2d 354, 362 (D.C.1979). Although a different judge could have weighed the relevant factors differently,[19] we conclude that the trial court's denial of the FOP's request for attorney's fees was not an abuse of discretion.

The trial court first examined whether there was a "public benefit derived from the instant case." *See Tax Analysts*, 965 F.2d at 1093. The FOP argued that it had made its FOIA request in an effort to unearth evidence of anti-union animus. The trial court determined, however, that "information [that] pertains to the collective bargaining process between the MPD and [the FOP] ... does not inure to the general public benefit." We note that "[t]he District of Columbia government [has] f[ound] and declare[d] that an effective collective bargaining process is in the general public interest." D.C.Code § 1–617.01(a). Nonetheless, we can find no fault with the trial court's ultimate determination that there was no evidence "that the requested information"—a blunderbuss demand for production of all emails

containing the word "union" or the FOP chairman's name—would "contribute to the public's ability to make vital political choices."[20]

Likewise, we agree with the court's ruling that that "the information contained in the documents provided by MPD did not provide a concrete public benefit."[21] In its motion for reconsideration and on appeal the FOP noted that the documents it obtained in response to its FOIA request led it to discover that MPD had failed to fully comply with a subpoena in a separate case; according to the FOP this constitutes a public benefit. As far as we can tell, however, MPD's noncompliance with a subpoena was immaterial to the outcome of the other case, and we can discern no broader benefit to the public from the disclosure of this litigation lapse.

The trial court considered the second and third factors—any commercial benefit or private interest—at the same time. As the court correctly noted, these factors are "closely related" and are "often considered together." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C.Cir.1995); *Davy*, 550 F.3d at 1160 (quoting *Tax Analysts*, 965 F.2d at 1095) ("The second and third factors, which are often considered together, assess whether a plaintiff has 'sufficient private incentive to seek disclosure' without

---

19. The District conceded at oral argument that it would not have been an abuse of discretion if the trial court had weighed the factors differently and decided to award fees.

20. In its order denying the FOP's motion for reconsideration, the trial court refined its analysis and distinguished between "information [that] pertains to the collective bargaining process between [the FOP] and the MPD, and ... any form of collective bargaining misconduct that would tend to implicate the public interest." We need not address whether that line is tenable or appropriate in assessing request for attorney's fees under the FOIA

statute because, as noted above, the FOP's request did not even focus on collective bargaining.

21. When examining "the public benefit derived from the case," *Tax Analysts*, 965 F.2d at 1093, the trial court correctly explored both the nature of the request—whether the request was tailored to provide a public benefit—and the public value of the information contained in the documents produced. *See Davy*, 550 F.3d at 1159 (examining both the request itself and the content of the released information).

attorneys fees."). In its order denying fees, the trial court determined that

> [a]lthough the plaintiff is not involved in a commercial business enterprise, its requests for emails from the MPD relate to the Plaintiff's interest in strengthening the collective bargaining power of the FOP members. In addition, the evidence does not suggest that the information requested by Plaintiff relates to a scholarly interest. As such, the Plaintiff had a sufficient personal motive to seek disclosure of the Defendant's emails, and thus the second and third factors weigh in favor of the Defendant.

We consider it a closer call whether a union, which receives substantial funding (if not all funding), from its members' dues and which operates to protect their bargaining power and working conditions, is more analogous to a commercial enterprise than a scholarly or news organization.[22] Nonetheless we return to the fact that the request at issue does not clearly request any information related to the union's actions on behalf of its members. It merely calls for the production of emails that include every mention of the union and the union chairman's name. Such a what-are-they-saying-about-me request seems the essence of self-interest. And while it is wholly appropriate for the union to seek

such information from the District government via FOIA, it was not an abuse of the trial court's discretion to weigh these factors against the FOP in making an assessment of FOP's entitlement to attorney's fees.

The trial court weighed the fourth factor, the reasonableness of the agency's withholding, in favor of the FOP. It would have been an abuse of discretion to do otherwise. It is undisputed that the government had no reasonable basis in law for withholding from the FOP the thousands of documents it ultimately produced. The District entirely ignored the deadlines D.C. FOIA imposes on agencies to respond to requests and could not even meet its generous self-imposed deadlines. The District was uncommunicative with the court and to the requesting party. Perhaps most startling in the context of a statute that is supposed to promote transparency, after months of silence, the District blamed the FOP for not being aware of the status of its request and the purported progress the District had made in processing it.[23] In short, the District's behavior in this case is precisely the type of behavior the fees provision is intended to discourage.

---

**22.** *See Fenster,* 617 F.2d at 742 n. 4 (quoting S.Rep. No. 93–854, at 19) ("Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group ... but would not if it was a large corporate interest (or representative of such an interest)."); *see also Cazalas,* 709 F.2d at 1054 (noting that "[c]ommercial profit pursued by a business firm seeking trade information must be carefully distinguished" from other incidental pecuniary benefits a FOIA requester might receive as a consequence of obtaining responsive information (the FOIA requester sought to use responsive information in a discrimination lawsuit that might result in an award of backpay) and determining that only the former was contemplated as a "commer-

cial" benefit by Congress when it amended federal FOIA).

**23.** As noted above, see note 4, the statute permits a requester to deem its request denied if the government does not respond within a certain time-frame. Here the FOP made a request. It waited far beyond the requisite time for a response. A response did not come. It filed suit. Under the circumstances, the onus was on the District to reach out to FOP to inform it that it had *not* denied the FOP's request. It was not the FOP's burden to follow up with the MPD's FOIA officer to disprove what the statute says the FOP was entitled to assume. *See* D.C.Code § 2–532(e), *supra* note 4.

■ The FOP argues that this finding should have been given more weight, indeed, that it should have carried the day. We agree that a finding of government obduracy or recalcitrance may tip the balance in favor of awarding fees, even when all other factors do not support a fee award. *See e.g., Seegull Mfg. Co. v. Nat'l Labor Relations Bd.*, 741 F.2d 882, 886 (6th Cir.1984) (where there was no public benefit other than vindication of the general objectives of FOIA, fees still awarded because of government obduracy); *Read v. F.A.A.*, 252 F.Supp.2d 1108, 1112 (W.D.Wash.2003) ("In extreme circumstances, the government's obduracy ... permits a court to ignore factors that weigh against an award of attorney's fees."); *Horsehead Indus., Inc. v. United States E.P.A.*, 999 F.Supp. 59, 69 (D.D.C. 1998) (sufficiently "mulish" behavior may "require slapping on [the government] the costs of [the plaintiff's] attorneys' fees without consideration of the other factors"); *Wheeler v. I.R.S.*, 37 F.Supp.2d 407, 414 (W.D.Pa.1998) (obduracy "can make the last factor dispositive without consideration of any of the other factors.... [I]t is this type of behavior that can allow a court to overlook a complete lack of public benefit."). The legislative history of the four-factor test for the award of attorney's fees supports such an approach. The Senate Report explained that "a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester." S.Rep. No. 93–854, at 19; *see also id.* (observing that fees are warranted where "government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior"); *id.* ("[I]t would seem tantamount to a penalty to require the wronged citizen to pay his [or her] attorney's fees to make the gov-

ernment comply with the law."). Nonetheless, that decision rests in the sound discretion of the trial court, who has witnessed the course of litigation firsthand and can best evaluate the magnitude and importance of each factor. *See Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 537, 26 L.Ed. 1157 (1881) (Trial courts who witness the evolution of a case and observe counsel in action have "far better means of knowing what is just and reasonable [with respect to attorney's fees] than an appellate court can have.").

Here there was no indication that the FOP's request benefited the public interest. Moreover, although the request was not made in pursuit of any obvious commercial benefit, it did seem self-interested in nature. On the other side of the balance, the record clearly demonstrated the District's complete disregard for its disclosure obligations. Although the trial court could have found that an award of fees was warranted under these circumstances, it was not an abuse of discretion for it to conclude that obduracy alone was not enough to justify an award of fees in this case.

■ Relatedly, the FOP argues that in making its ruling the trial court employed an approach to the four-factor test that signals an absence of an exercise of discretion. Specifically, the FOP asserts that the trial court analyzed each factor in isolation, determined whether it weighed in favor of appellant or appellee, and then, as if adding up points, determined that the FOP was not entitled to fees because the score was 3 to 1. We agree that such point-counting would be inappropriate and these factors should be individually and collectively weighed. *LaSalle*, 627 F.2d at 484 n. 5 ("Application of these factors should not be mechanistic"); *see also Tax Analysts*, 965 F.2d at 1094 (The exercise of a trial court's discretion requires a "sifting

of those [four] criteria over the facts of a case."). However, we reject the FOP's characterization of the trial court's ruling in this case.

The trial court cited to *LaSalle* as authority, which, as quoted above, emphasizes that a non-mechanistic approach is warranted. Moreover, the court's consideration of each factor was thoughtful, though we might not agree with its reasoning in every aspect. At worst, the trial court failed to include a synthesizing conclusion after reviewing the four factors. While it would have been preferable for the court to include a final paragraph explaining how it ultimately weighed and balanced the four factors, we decline to hold that the court abused its discretion for want of a few summarizing sentences. Rather, we presume that the trial court found that the lack of a public benefit simply outweighed the unreasonableness of the government's behavior in this case. *See Harkins v. United States*, 810 A.2d 895, 901 (D.C.2002) ("Absent a showing otherwise, trial judges are presumed to know and apply the proper legal standards.") (internal quotation marks omitted).

For the foregoing reasons, the trial court's order denying the FOP's request for attorney's fees is

*Affirmed.*